Case No. 23-30723

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Curtis Terrell; Angela Terrell,
*Plaintiffs-Appellees*,

v.

Jason Allgrunn; Michael Banta; Jeffery Henderson, Jr.
*Defendants-Appellant*s

On Appeal from the U.S. District Court for the Western District of Louisiana, Civil Action No. 5:20-cv-00999

# ORIGINAL BRIEF ON BEHALF OF DEFENDANTS-APPELLANTS

James R. Sterritt, #18447
James Ashby Davis, #37653
COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation
P. O. Box 22260
Shreveport, LA  71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyancey.com
*Attorneys for Defendants-Appellants Jason Allgrunn, Michael Banta, and Jeffery Henderson, Jr.*

Dated: December 28, 2023

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel for Defendants-Appellants Jason Allgrunn, Jeffery Henderosn, Jr., and Michael Banta, in the case styled with the short caption *Terrell v. Allgrunn*, certify pursuant to Fifth Circuit Rule 28.2.1 that the following persons and entities have an interest in the outcome of this appeal.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

A. Named Parties:

    1.     DeSoto Parish Sheriff Jayson Richardson (defendant)

    2.     Jason Allgrunn (defendant-appellant)

    3.     Jeffery Henderson, Jr. (defendant-appellant)

    4.     Michael Banta (defendant-appellant)

    5.     Curtis Terrell (plaintiff-appellee)

    6.     Angela Terrell (plaintiff-appellee)

B. Counsel for the Interested Parties (other than plaintiffs-appellees):

COOK, YANCEY, KING & GALLOWAY, APLC
James R. Sterritt, #18447
James Ashby Davis, #37653
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

Shreveport, Louisiana, this 28th day of December, 2023.

*/s/ James Ashby Davis*
James Ashby Davis, #37653

ATTORNEY OF RECORD FOR
DEFENDANTS-APPELLANTS

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants-Appellants Jason Allgrunn, Jeffery Henderson, Jr., and Michael Banta respectfully submit that oral argument would be beneficial to the Court in resolving this matter.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ............................................................. i-ii

Statement Regarding Oral Argument ....................................................... iii

Table of Contents ................................................................................. v-vii

Table of Authorities ........................................................................... viii-xi

Jurisdictional Statement .......................................................................... 1

Statement of the Issues Presented for Review ......................................... 1

Statement of the Case............................................................................. 2

    I.      Underlying Factual Background ......................................... 3

          A.  Allgrunn is dispatched to a call regarding a drunk and high individual who is behaving erratically ............................................. 3

          B.  Allgrunn arrives and observes Curtis' intoxication and erratic behavior ...................................................................... 4

          C.  Curtis pulls away; Allgrunn takes Curtis to the ground; Curtis continues resisting ............................................................ 6

          D.  Curtis bites Allgrunn; Allgrunn strikes Curtis once ........................ 9

          E.  Allgrunn briefly detains Angela after she actively interferes .......... 9

          F.  Henderson arrives after Curtis has been handcuffed and after Angela has been detained ............................................... 11

          G.  EMS examines Curtis; Banta arrives ........................................... 11

          H.  EMS takes Curtis to the hospital, where he is placed under a Physician's Emergency Custody (PEC) Order ............................. 12

          I.  Allgrunn obtains Curtis' criminal history ...................................... 13

J.  Allgrunn takes Curtis to jail ........................................................... 14

K.  Procedural history and facts relevant to the issues submitted for review ........................................................................................ 15

Summary of Argument .......................................................................... 16

Argument ............................................................................................... 17

I.    The District Court erred in denying Allgrunn, Henderson, and Banta's Motion for Summary Judgment based on qualified immunity .......... 17

A. Standard of review ....................................................................... 17

B. The district court erred at both steps of qualified immunity on Curtis and Angela's Fourth Amendment false arrest claims ........ 18

1.  The district court applied erroneous Fourth Amendment and qualified immunity standards .............................................. 18
2.  Allgrunn had probable cause (or, alternatively, at least arguable probable cause) as to Curtis and Angela ............... 23

C. The district court erred at both steps of the qualified immunity analysis on Curtis and Angela's Fourth Amendment excessive force claims .................................................................................. 40

D. The district court erred in denying Appellants qualified immunity as to Curtis' malicious prosecution claim ...................................... 50

E. The district court erred in denying Appellants qualified immunity as to the First Amendment retaliation claims ................................ 52

F. The district court erred in denying Henderson and Banta qualified immunity on all federal claims ...................................................... 53

II.   The district court erred in denying Appellants' qualified immunity and statutory immunity as to the state law claims ..................................... 55

Conclusion ............................................................................................ 57

Certificate of Service ................................................................................59

Certificate of Compliance ........................................................................60

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ............................................. 37, 45

*Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023) .....................................................18

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ................................................................1

*Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022)................................................. 46, 49

*Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) ......................................................21

*Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022)............................................. 35, 48-50

*Canady v. Prator*, 2015 WL 507883 (W.D. La. 2015)............................................26

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) ....................................18

*Castellano v. Frangozo,* 352 F.3d 939 (5th Cir. 2003).................................... 15, 50

*City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9 (2021)....................................21

*Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019) ............................................. 21, 31

*DeRamus v. City of Alexandria*, 2016 WL 285150 (W.D. La. 2016).....................35

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ..................................................... 20, 28

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ......................................... 31-33

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ........... 19, 21, 31, 35, 41, 48, 54

*Graham v. Connor,* 490 U.S. 386 (1989) ...................................................40-46, 50

*Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138 (La. 5/20/2003),
  851 So.2d 959 ........................................................................................................56

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016)..................................... 17, 46, 48-49

*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023) ................................................. 51-52

*Hansen v. Odin*, 2006 WL 626377 (S.D. Tex. 2006) .............................................51

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................28

*Hernandez v. City of Lubbock*, 634 F. Appx. 119 (5th Cir. 2015) .........................42

*Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318 (La. 11/30/1994).........................56

*Moresi v. Dept. of Wildlife & Fisheries*, 567 So.2d 1081 (La. 1990) .....................55

*Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996) .........................................................1

*Mullenix v. Luna*, 577 U.S. 7 (2015) ....................................................... 21, 38, 40

*Nieves v. Bartlett,* 139 S. Ct. 1715 (2019) ..................................................52

*Pierce v. Smith*, 117 F.3d 866 (5th Cir. 1997) .........................................................22

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012).................. 18, 40, 46, 49

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)............................................. 22, 41

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005)...................................55

*Robertson v. Town of Washington*, 2015 WL 1564888 (W.D. La. 2015) ...............35

*Rombach v. Culpepper*, 2021 WL 2944809 (5th Cir. 2021) ...................................55

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................... 18, 46

*Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022)............................................... 46, 48-50

*State v. Green*, 2011-2425 (La. 1/20/2012), 79 So. 3d 1013........................... 26, 34

ix

*State v. Stowe*, 653 So. 2d 168 (La. 1994) ...............................................................25

*State v. Trepagnier*, 07-749 (La. App. 5 Cir. 3/11/2008), 982 So. 2d 185 ..............25

*Stringfellow v. City of Ruston*, 2017 WL 3202830 (W.D. La. 2017) .......... 25-28, 35

*Terry v. Ohio*, 392 U.S. 1 (1968) ............................................................................23

*Thompson v. Clark*, 596 U.S. 36 (2022) ..................................................... 15, 51-52

*Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021) ..............41, 45-46, 48-49

*United States v. Estrada*, 459 F.3d 627 (5th Cir. 2006) ................................... 23, 34

*United States v. Sauls*, 192 Fed. Appx. 298 (5th Cir. 2006) ...................................51

*United States v. Wilborn*, 2017 WL 761184 (W.D. La. 2017) ...............................52

*White v. Pauly*, 580 U.S. 73, 80 (2017) ..................................................................54

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ....................................................53

*Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995) .....................................................53

## Statutes

28 U.S.C. § 1291 ................................................................................................1, 31

42 U.S.C. § 1983 ................................................................................................1, 53

La. R.S. 9:2798.1 .......................................................................................... 16, 55-56

La. R.S. 14:103(A)(2-3) .......................................................................................23-26

La. R.S. 14:97 ............................................................................................. 23, 26, 34

La. R.S. 14:100.1 ........................................................................................ 23, 26, 34

La. R.S. 14:108 ............................................................... 23, 27-28

La. R.S. 14:327 ...................................................................... 38-40

La. R.S. 14:329 ................................................................34-35, 37-38

La. R.S. 28:2 ........................................................................ 29-30

La. R.S. 28:53 ............................................... 13, 16, 20, 23, 28-33, 55, 57

## JURISDICTIONAL STATEMENT

Appellees Curtis Terrell ("Curtis") and Angela Terrell ("Angela") ("Appellees") filed this action against DeSoto Parish Sheriff Jayson Richardson ("Sheriff Richardson"), Deputy Jason Allgrunn ("Allgrunn"), Deputy Jeffery Henderson, Jr. ("Henderson"), and Sergeant Michael Banta ("Banta"). Appellees asserted federal constitutional claims under 42 U.S.C. § 1983 and state law claims arising out of an August 11, 2019, incident. ROA.18-52.

Allgrunn, Henderson, and Banta ("Appellants") filed a Motion for Summary Judgment ("MSJ") based on qualified immunity, which the district court denied on September 29, 2023. ROA.1751-1790. Appellants appeal that ruling. Appellants' notice of appeal was timely filed on October 9, 2023. ROA.1791-1792.

This Court has jurisdiction under 28 U.S.C. §1291. *See Behrens v. Pelletier*, 516 U.S. 299, 308-313 (1996). This Court also has pendent appellate jurisdiction to review the district court's decision as to Appellees' state law claims. *See Morin v. Caire*, 77 F.3d 116, 119-120 (5th Cir. 1996).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred by denying Appellants qualified immunity at both steps of the qualified immunity analysis as to all federal and state constitutional claims, as well as statutory immunity for state tort claims.

2. The existence of probable cause effectively precludes Appellees' claims. The district court erred in failing to recognize that a reasonable officer could have believed the arrest and/or detention of Appellees was lawful given the totality of the facts and circumstances.

## STATEMENT OF THE CASE

***Introduction:*** This case arises from an incident involving an arrest of Curtis by Deputy Allgrunn. Curtis was drunk, high, and erratically running up and down three residential streets just before 10 PM on a Sunday night. Curtis actively resisted Allgrunn's attempts to restrain him. Curtis was transported to a hospital, where he was held pursuant to a physician's emergency certificate while he sobered up. The incident also involved the temporary detention of Curtis' wife Angela, who interfered with Allgrunn as he was performing his duties.

Curtis and Angela raise multiple claims. However, probable cause, reasonable force, qualified immunity, and statutory immunity defeat all their claims.

The district court's opinion denying Allgrunn, Henderson, and Banta's qualified immunity applies incorrect legal standards and ignores undisputed audio and video evidence. Allgrunn, Henderson, and Banta committed no constitutional violations or torts. All federal and state law claims should be dismissed.

I.    **Underlying Factual Background**.

    **A. Allgrunn is dispatched to a call regarding a drunk and high individual who is behaving erratically.**

On August 11, 2019, at around 9:50 PM, Angela called 911 about Curtis. A 911 operator spoke with her, and then joined a DeSoto Parish Sheriff dispatcher to the call. The calls were recorded. DEF 175 at 71.[1]

Originally, Angela's report was a report of an overdose, which was transmitted to Allgrunn. DEF 175 at 71, 70. Subsequently, Angela stated that Curtis was running up and down three residential streets near his home in a black tank top and white shorts. DEF 175 at 69. Angela reported that she was struggling to keep up with Curtis. *Id.* Angela stated that Curtis had taken pain pills and had been drinking alcohol that day. *Id.* at 66. After some time, Angela reported that Curtis had made it back to Pine Street, where Curtis and Angela lived.  *Id.*

As Angela reported these facts, the DeSoto Parish Sheriff dispatcher relayed them to Allgrunn, who was en route to the scene. DEF 175 at 69, 68, 66. DeSoto Parish EMS personnel were also dispatched to the scene by the 911 dispatcher. EMS

---

[1]    These audio recordings were filed with the district court. ROA.325, 1726. Bates-labeled item DEF 175 contains numerous recordings, each of which begins with a different number, such as "0000000071." References to those individual recordings in this brief are made in the format "DEF 175 at [number of specific recording]."

personnel waited at a nearby gas station until Allgrunn could secure the scene and make sure that it was safe. DEF 175 at 66. Before reaching Curtis and Angela's location, Allgrunn observed that this individual "might be under the influence of something else" in addition to the alcohol and pain pills. DEF 175 at 68.

**B. Allgrunn arrives and observes Curtis' intoxication and erratic behavior.**

Allgrunn's dashboard camera recorded video and audio of what occurred once Allgrunn reached the location where Curtis and Angela were standing in Pine Street.[2] Allgrunn arrived with his flashing red and blue lights on. Allgrunn was in uniform. Allgrunn was the only officer there. As Allgrunn approached Curtis and Angela,

---

[2] The video recordings from Allgrunn's vehicle and those from the vehicles of Henderson and Banta, who arrived at the scene after Curtis had been handcuffed, were filed with the district court. ROA.345, 346, 347. Each video is referred to by its bates number, with the format "DEF [insert number]," followed by a timestamp for the portion of the video being referenced.

These videos can be watched in two ways. First, they can be watched using any commonly available video player by double-clicking on the MP4 video file for each video. Second, the videos can be watched using the "WatchGuard" video program, which should be accessible by double clicking the "WGVPlayer" icon.

The time stamps for the video are different depending upon the method by which the video is viewed. Viewing the MP4 video file through any common video player starts with a time stamp of 0:00:00. The time stamps on the WatchGuard program begin at a specific time of day expressed in a 24-hour format, shown at the top of the screen.

For clarity and simplicity, this brief uses time stamps from watching the video with any common video player, starting with 0:00:00, since that is what the district court used in its Ruling.

they were standing in the road, with Curtis standing toward the left side of the road and Angela standing toward the right side of the road. DEF 176 at 0:00:58-0:01:15.

Pine Street is a residential street in a populated area. When Allgrunn arrived, he passed a residence on the right side of Pine Street as he approached Curtis and Angela. The left side of Pine Street was lined with several houses close to where Curtis and Angela were standing. There were approximately ten (10) personal vehicles and one school bus parked in front of these houses. A neighbor of Curtis and Angela, Shirley Youngblood ("Youngblood"), was standing out in the yard of one of those houses and looking at Curtis and Angela. DEF 176 at 0:00:58-0:01:15.

Allgrunn parked his vehicle and got out. Allgrunn said to Youngblood, "What's up?" Youngblood told Allgrunn, referencing Curtis, "That's him right there." Allgrunn responded, "Yea I know, that's him." DEF 176 at 0:01:15-0:01:20.

Curtis was talking on the phone on speakerphone, with the volume at a loud setting. Allgrunn asked Curtis, in a calm manner, "You alright?" Curtis said, "Yes sir." Curtis spoke to the person with whom he was speaking on the phone. Curtis then turned away from Allgrunn and took three steps away from Allgrunn, even though Allgrunn had begun walking towards Curtis. DEF 176 at 0:01:20-0:01:34.

Allgrunn said, "Sir, come here." Curtis did not come toward Allgrunn. Instead, Curtis said, "Am I arrested? I know my rights. She's bullshitting [pointing

toward Angela].” Even though Allgrunn had just told Curtis, “Sir, come here,” Terrell turned his back to Allgrunn and took two more steps away from Allgrunn. Allgrunn said, “Ok, well you’re running up and down the road [according to what Angela herself had just reported], and I need to talk to you. Come over here.” Again, Curtis did not come toward Allgrunn. DEF 176 at 0:01:34-0:01:45.

Allgrunn said, using a sterner tone given Curtis’ noncompliance thus far, “What do you not understand that I’m telling you to come over here?” Terrell said, “Look [mumbling].” Allgrunn said, “Failure to do so and you will be under arrest.” Terrell said, “Am I arrested for something?” Allgrunn repeated, “Failure to do so, you will be under arrest.” Terrell said, “Ok I’m right here, I mean.” Allgrunn commanded Curtis to walk to the front of Allgrunn’s vehicle. DEF 176 at 0:01:45-0:02:07.

### C. Curtis pulls away; Allgrunn takes Curtis to the ground; Curtis continues resisting.

Finally, Curtis began walking toward Allgrunn’s vehicle. As he was walking, though, he turned toward Allgrunn and said, “Ok, for what?” Allgrunn said, “Because I said.” As Curtis and Allgrunn were walking back toward the front of Allgrunn’s vehicle, Curtis answered a phone call. Allgrunn said to Curtis as Curtis was answering that call, “Think I’m playing games with you?” Curtis did not

acknowledge what Allgrunn said to him, but instead started talking loudly on speakerphone with the person who had called him. DEF 176 at 0:02:07-0:02:15.

Allgrunn told Curtis to "stand right here." As Allgrunn placed Curtis in a position facing the front of Allgrunn's vehicle, Allgrunn explained to Curtis that he had to make sure Curtis had no weapons on him. With Curtis right in front of Allgrunn and both facing toward the front of Allgrunn's vehicle, Allgrunn grabbed the handcuffs off his utility belt. DEF 176 at 0:02:15-0:02:27.

While this was occurring, rather than paying attention to Allgrunn, Curtis was looking over at Youngblood and stating, "Shirley, you seen that right? Tell Dick to come outside, he knows the law too. I ain't done nothing wrong." In other words, Curtis called for a male individual named "Dick," who was not known to Allgrunn, to come outside and assist Curtis in some way. DEF 176 at 0:02:15-0:02:27.

Allgrunn attempted to grab Curtis' left wrist to place a handcuff on it. But, as Allgrunn was doing so, Curtis pulled his left arm away from Allgrunn. Curtis also moved his torso away from Allgrunn, but turned his face toward Allgrunn and said, "What did I do?" Allgrunn said, "Put your hands behind your back." Curtis did not immediately comply, but instead said, "Look, what?" DEF 176 at 0:02:15-0:02:27.

Allgrunn then took Curtis to the ground to complete the handcuffing of Curtis. Curtis held both his hands underneath himself where Allgrunn could not get

to them. Allgrunn told Angela to "Back up." Allgrunn told Curtis, "Put your hands behind your back." In response, Curtis did not comply. Instead, he said, "I'll put my hands behind my back when you be nice, alright! Be nice!" This was a clear expression of Curtis' current resistance and his intention to continue to resist. Allgrunn told Curtis, "Put your hands behind your back. Put your hands behind your back." Again, instead of complying with Allgrunn's command to put his hands behind his back, Curtis said, "See, this is what I'm talking about." Curtis also said to Allgrunn, "Quit being an ass." DEF 176 at 0:02:27-0:02:50.

Because Curtis continued to actively resist, Allgrunn delivered several strikes to Curtis' body to gain compliance and place Curtis into handcuffs. Allgrunn again told Curtis to put his hands behind his back. Curtis said, "I will," but did not do so. Angela, who had come closer despite Allgrunn's earlier command for her to stand back, said, "Baby, just put your hands behind your back" – clearly showing that Curtis was still actively resisting Allgrunn's attempt to handcuff Curtis. DEF 176 at 0:02:50-0:03:08. In their affidavits, neither Angela nor Curtis denies that Curtis was actively resisting while on the ground. ROA.963-964, 978-979.

As all of this was occurring with Curtis and Allgrunn on the ground, Allgrunn's head and shoulders moved up and down – showing that Curtis was struggling with Allgrunn and refusing to put his hands behind his back. Allgrunn

also had to reposition himself to try to get Curtis under control. At first, Allgrunn was facing straight down Pine Street, but he then had to reposition himself during the struggle with Curtis such that he was facing to the left of the street. DEF 176 at 0:02:27-0:03:08.

Angela had continued to walk closer to Allgrunn and Curtis as she was telling Curtis to put his hands behind his back. Allgrunn again told her to get back. Angela did not comply. Once Allgrunn was finally able to handcuff Curtis, Allgrunn told Curtis, "Stand up. Stand up." Curtis said "My back's broke" – a false statement. Allgrunn said, "Roll onto your side." DEF 176 at 0:03:08-0:03:25.

### D. Curtis bites Allgrunn; Allgrunn strikes Curtis once.

Then, Curtis bellowed something and bit Allgrunn's ankle. Allgrunn delivered a single strike to Curtis' face to cease Curtis' violent active resistance. DEF 176 at 0:03:25-0:03:30; ROA.182, 367, 383.

### E. Allgrunn briefly detains Angela after she actively interferes.

After the biting incident, Angela continued to distract Allgrunn from performing his duties. Specifically, Angela (1) continually spoke loudly on her cell phone; (2) spoke loudly to the Terrells' neighbor, Youngblood; and (3) shouted derisive and distracting comments at Allgrunn while he was attempting to converse with the dispatcher on his radio. DEF 176 at 0:03:30-0:08:15.

When EMS personnel arrived, Allgrunn was attempting to explain to them what had happened so that they could appropriately assess and treat Curtis. Angela interrupted and prevented Allgrunn from speaking with EMS personnel. Standing just a few feet away from Allgrunn and the EMS personnel, Angela continued to attempt to talk over Allgrunn despite orders to be quiet so that he could speak with EMS personnel. Finally, when Angela again started talking loudly on her cell phone, Allgrunn told her to move back multiple times. Angela did not comply. Only then did Allgrunn detain her and tell her, "put the stuff [*i.e.*, her cell phone and wallet] down." Angela did not comply with that directive, either. DEF 176 at 0:08:15-0:11:56.

Allgrunn took Angela to the passenger side of the vehicle to place her in the back seat. Allgrunn's back seat camera captured what transpired. Angela actively resisted Allgrunn's numerous demands that she hand over her belongings by holding her cell phone and wallet away from Allgrunn's reach while he tried to grab them. Eventually, Angela relented and handed them over. Angela continued to resist Allgrunn's numerous orders for her to get in the vehicle. Finally, after approximately 50 seconds or so of active resistance by Angela, Allgrunn was able to get Angela in the back seat of his vehicle. DEF 177 at 0:11:56-0:12:45.

**F. Henderson arrives after Curtis has been handcuffed and after Angela has been detained.**

As Allgrunn and EMS personnel were conversing with each other and with Curtis, with Curtis already handcuffed, Henderson arrived. Henderson's vehicle slowly came up Pine Street towards Allgrunn, Curtis, Angela, and EMS personnel while Allgrunn was telling Angela multiple times to back away. Henderson parked his vehicle and got out. DEF 176 at 0:11:15-0:12:15; DEF 180.

By that time, Allgrunn had already escorted Angela to the back passenger door of Allgrunn's vehicle. Henderson was walking up to the scene as Allgrunn was getting Angela into the car. Henderson looked briefly at Curtis, then went over to the other side of the vehicle where Allgrunn was getting Angela into the vehicle. Approximately 1-2 seconds after Henderson reached the side of the vehicle where Allgrunn was located, the car door shut – meaning that at that point, Allgrunn had finally gotten Angela into the back seat of his vehicle. DEF 176 and 177 at 0:12:15-0:12:45; DEF 180.

**G. EMS examines Curtis; Banta arrives.**

EMS personnel had been initially called to the scene to address Curtis' self-induced intoxication, but waited off-site while the scene was secured by Allgrunn.

EMS personnel saw Curtis at the scene after he was handcuffed. DEF 176 at 0:08:10-0:24:00; ROA.332-333.

At first, Curtis was not cooperative with EMS personnel. EMS personnel noted in their records that Curtis "was uncoopertive (sic) on scene with DSO & EMS and did not want EMS to check him out initially." EMS personnel were eventually able to examine Curtis, and they noted Curtis' only injury as "a small laceration to his right side top and bottom lip." ROA.332-333; DEF 176 at 0:08:10-0:24:00.

While EMS was attending to Curtis and placing him in an ambulance for transport to the hospital, Banta arrived. Banta was a sergeant (*i.e.*, a supervisor). Banta asked Allgrunn, "What's the deal?" Allgrunn explained what had happened. Banta told Allgrunn to follow EMS to the emergency room at the hospital, and he stated that he would follow behind Allgrunn. DEF 176 at 0:26:00-0:28:10; DEF 179.

## H. EMS takes Curtis to the hospital, where he is placed under a Physician's Emergency Custody (PEC) Order.

At the hospital, Curtis admitted that on August 11, 2019, he had used approximately half a gram of methamphetamine, drank approximately ten (10) beers, took four (4) tramadol pills, and took 10-15 pain pills containing a mixture of Tylenol (acetaminophen) and codeine. ROA.351, 354. He was "uncooperative" and "hostile" with hospital staff – as he had been with Allgrunn. ROA.355. Hospital staff

noted that Curtis had "slurred speech," "flight of ideas," and "strong ETOH [alcohol] odor." ROA.351.

Dr. Robert Krupkin, the emergency room physician, examined Curtis and completed a report. ROA.355-356. Dr. Krupkin issued a physician's emergency certificate ("PEC") under La. R.S. 28:53 for Curtis. ROA.355. Dr. Krupkin later tried to treat Curtis' lip laceration. But, Curtis "refus[ed] closure of [the] lip laceration," and "stated he didn't want 'that doctor' to touch him." ROA.351, 355. Allgrunn and Banta "tried to reason with" Curtis regarding the need for treatment to his lip laceration, "w/o success." ROA.355. Other than the lip laceration for which Curtis refused treatment, neither Dr. Krupkin nor any other medical provider made note of any other physical injuries to Curtis. ROA.351-356.

Blood and urine samples were taken from Curtis. ROA.351. Curtis tested positive for amphetamines ("AMP"), methamphetamine ("mAMP"), and opioids ("OPI"). ROA.356, 360. Curtis' blood alcohol ("ETOH") level was 103.7 mg/dL, a "high" reading. ROA.359.

## I. Allgrunn obtains Curtis' criminal history.

Allgrunn's dashboard camera continued running while Allgrunn and Banta went into the hospital with Curtis. This video includes audio recorded from Allgrunn's lapel microphone. While in the hospital, Allgrunn requested that a

dispatcher send him Curtis' criminal history, or "CH." DEF 176 at 38:40-39:15.

Later, Curtis and Allgrunn discussed Curtis' criminal history stretching back to

1997, including twelve past arrests, a 2017 arrest in Sabine Parish for aggravated

battery, and Curtis' past conviction for accessory after the fact to assault by drive by

shooting. DEF 176 at 1:01:47-1:03:15; ROA.336-344.

### J. Allgrunn takes Curtis to jail.

After Dr. Krupkin rescinded the PEC, Curtis was released from the hospital.

Allgrunn then took Curtis to jail. Allgrunn completed an arrest report for Curtis. The

arrest report stated that Curtis had been arrested for disturbing the peace and resisting

with force. ROA.367. The report states as follows:

> On 8-11-19 at approx. 2153 hrs. above offender Terrell was observed
> in the street in front of 161 Pine after receiving a call from his wife
> Angela Terrell that Curtis was drunk and taken pain pills. Upon giving
> Terrell a verbal command to step in front of my unit to be patted down
> for weapons Terrell pulled away resisted handcuffing. Terrell
> continued to resist trying to stand up keeping his hands under his body.
> Terrell while on the ground turned his head biting my right ankle where
> my boot was. Terrell was under the influence of an alcoholic and or
> narcotic appearing in an intoxicated manner. ROA.367.

Allgrunn also completed an incident report for the incident, containing a more

detailed narrative of the incident. ROA.383.

**K. Procedural History And Facts Relevant To The Issues Submitted For Review.**

Appellees filed suit on August 6, 2020. ROA.18-52. Appellants and Sheriff Richardson filed an answer, which included the defense of qualified immunity. ROA.68-94.

The case proceeded through extensive written discovery. ROA.96-108. Then, Appellees filed a Motion seeking leave to file an amended complaint adding a federal malicious prosecution claim and a claim against an insurer. ROA.109-114.

Appellants opposed the Motion because no federal malicious prosecution claim existed under Fifth Circuit jurisprudence at the time, particularly *Castellano v. Fragozo*, 352 F.3d 939, 953-954 (5th Cir. 2003) (*en banc*) and *Morgan v. Chapman*, 969 F.3d 238, 245-246 (5th Cir. 2020). ROA.155-160. The district court permitted Appellees to file their amended complaint. ROA.172-175. Appellants and Sheriff Richardson filed a Motion to Dismiss in response. ROA.216-230. Appellants and Sheriff Richardson also filed a Motion to Stay the case pending resolution of the qualified immunity issue, which the district court granted. ROA.231-239.

The district court granted the Motion to Dismiss in part and denied it in part. The district court granted the Motion to Dismiss as to the federal malicious prosecution claim. ROA.312-316. Later, after the Supreme Court decided *Thompson*

*v. Clark*, 596 U.S. 36 (2022), the district court reversed its prior ruling over Appellants' objection, reinstating Curtis and Angela's federal malicious prosecution claim. ROA.1410-1412.

Appellants and Sheriff Richardson filed an MSJ seeking dismissal of all claims, including seeking dismissal of all individual capacity claims on qualified immunity grounds. ROA.322-428. Appellees filed a motion for partial summary judgment ("MPSJ") as to certain claims. ROA.882-1298. On September 29, 2023, the district court issued a Memorandum Ruling (the "Ruling") granting in part and denying in part the MSJ, including denying Appellants' assertion of qualified immunity, and denying Appellees' MPSJ as to all claims against Appellants that were the subject of the MPSJ. ROA.1751-1790. On October 9, 2023, Appellants filed a timely notice of appeal. ROA.1791-1792.

## SUMMARY OF ARGUMENT

Appellants are entitled to qualified immunity on all federal and state constitutional claims. Appellants are also entitled to immunity under La. R.S. 9:2798.1 and La. R.S. 28:53(L) on the state law tort claims.

The district court erred in the following non-exclusive list of ways in denying Appellants' MSJ:

- Applying a subjective Fourth Amendment standard;

16

- Defining clearly established law at an impermissibly high level of generality;

- Ignoring undisputed facts shown by video and audio evidence; and

- Failing to address binding Fifth Circuit precedent which Appellants cited.

Under the proper legal standards and the complete facts, Appellants are entitled to dismissal of all claims. Allgrunn had probable cause, or alternatively arguable probable cause, to arrest and/or detain Curtis and Angela for multiple crimes. The force Allgrunn used was reasonable under the circumstances. Neither Henderson nor Banta had any opportunity to do anything about Allgrunn's encounter with the Terrells because Henderson and Banta did not arrive until later, and they had no reason or obligation to second-guess Allgrunn's actions after they arrived.

Appellants are entitled to qualified immunity and to Louisiana statutory immunity. The district court's Ruling should be reversed. All claims against Appellants should be dismissed.

## **ARGUMENT**

## I.     **The District Court erred in denying Allgrunn, Henderson, and Banta's Motion for Summary Judgment based on qualified immunity.**

### A. Standard of review.

Because this is an appeal from the denial of an MSJ, the standard of review is *de novo*. *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Argueta v. Jaradi*, 86 F.4th 1084, 1089 n.3 (5th Cir. 2023). When there is video evidence, it is erroneous to analyze the events at issue while "omi[tting] key events as depicted by the videotape." *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) (internal quotations omitted).

## B. The district court erred at both steps of qualified immunity on Curtis and Angela's Fourth Amendment false arrest claims.

### 1. The district court applied erroneous Fourth Amendment and qualified immunity standards.

The district court erred in (a) applying a ***subjective*** Fourth Amendment standard as opposed to an ***objective*** reasonableness standard and (b) finding – under this incorrect standard – that there was sufficient evidence to show a Fourth Amendment violation on the false arrest claims.

Probable cause is based on the "totality of circumstances" - not on an individual fact in isolation. The "whole picture" must be considered, as "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *District of Columbia v. Wesby*, 583 U.S. 48, 60 (2018). "Probable cause is not a high bar…. [It] requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 57. "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 56-57.

However, the district court instead applied a ***subjective*** Fourth Amendment standard – including placing emphasis in the form of italics on the words showing that the standard the district court applied was a subjective standard. The district court erroneously held that "Defendants cannot simply assert a list of violations for which, with the benefit of hindsight, a reasonable officer *could* have had probable cause to arrest Mr. Terrell; instead, they must instead demonstrate that Allgrunn believed that he *actually* had probable cause to take Mr. Terrell into protective custody based on the facts known to him at the time." ROA.1764.

The district court repeated and compounded this same error later, summarizing its reasons for denial of qualified immunity as follows:

In this case, Plaintiffs have provided sufficient summary judgment evidence to call into question whether Allgrunn *actually* believed that Mr. Terrell was disturbing the peace, that Mrs. Terrell was obstructing his investigation, or that Mrs. Terrell was impeding the responders' medical evaluation. Certainly, as the Court has already expressed, there is no evidence that Allgrunn was taking Mr. Terrell into protective custody. ROA.1768.

The district court's subjective standard directly conflicts with longstanding precedent establishing an objective Fourth Amendment standard, including *Devenpeck v. Alford*, 543 U.S. 146 (2004). In *Devenpeck*, the Supreme Court held that "Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause . . . That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* at 153. Thus, it is irrelevant whether Allgrunn "actually believed" he had probable cause to arrest Curtis and Angela or whether he "actually believed" he had probable cause to take Curtis into protective custody under La. R.S. 28:53.

Further, the district court erred at the second step of qualified immunity, at which courts must determine whether the officer's actions violated clearly established law. Specifically, the district court defined clearly established law at a high level of generality, holding that "the Fourth Amendment strictly prohibits an officer from arresting an individual without probable cause." ROA.1767. The district

court's qualified immunity analysis also placed the burden on Appellants to find precedent justifying their actions. ROA.1768.

In doing so, the district court erred because courts cannot "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Instead, "[t]he dispositive question in this step of the qualified-immunity analysis is whether the violative nature of *particular* conduct is clearly established." *Cleveland v. Bell*, 938 F.3d 672, 677 (5th Cir. 2019) (internal quotations omitted). The "clearly established" standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63-64. "[T]he specificity" of the rule at issue "is especially important in the Fourth Amendment context." *Id.*; *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021); *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11-12 (2021).

In Fourth Amendment false arrest claims, this Court has expressed the "clearly established" step of qualified immunity as a test for whether the officer had at least "arguable" probable cause: "There must not even arguably be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

Further, the burden is upon Curtis and Angela to show that Allgrunn's actions violated clearly established law. Appellants do not have the burden to show that they did not violate clearly established law (though Appellants have done so). *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997).

Thus, the Fourth Amendment false arrest and qualified immunity standards that the district court applied were wrong in multiple ways. The correct standards from the cases cited above are as follows. At the first step of qualified immunity, the Court must determine whether, under the facts in the summary judgment record – which largely consists of undisputed video and audio evidence of the incident – Allgrunn had probable cause to (a) arrest Curtis or take him into protective custody and (b) arrest Angela.

At the second step, even if the Court finds that Allgrunn did not have probable cause as to one or both of Curtis and Angela, the Court must determine whether Allgrunn had at least "arguable" probable cause – that is, whether the law at the time was so clearly established that every reasonable official would have understood that, under the particular circumstances at issue, Allgrunn's actions violated the Fourth Amendment. The burden is upon Curtis and Angela to show that Allgrunn did not have even arguable probable cause by citation to precedent addressing the particular circumstances at issue.

**2. Allgrunn had probable cause (or, alternatively, at least arguable probable cause) as to Curtis and Angela.**

***Probable Cause as to Curtis:*** Contrary to the district court's Ruling, under the complete facts in the summary judgment record and the proper legal standard, Allgrunn had probable cause, or alternatively at least arguable probable cause, to arrest Curtis for multiple crimes. Specifically, these crimes were: (1) disturbing the peace under La. R.S. 14:103(A)(3); (2) disturbing the peace under La. R.S. 14:103(A)(2); (3) simple obstruction of a highway under La. R.S. 14:97; (4) obstructing a public passage under La. R.S. 14:100.1; (5) resisting an officer under La. R.S. 14:108; and (6) resisting an officer with force or violence under La. R.S. 14:108.2. Allgrunn also had probable cause, or at least arguable probable cause, to take Curtis into protective custody under La. R.S. 28:53.[3]

First, the crime of disturbing the peace under La. R.S. 14:103(A)(3) consists of two elements: (1) "appearing in an intoxicated condition" in (2) "such a manner as would foreseeably disturb or alarm the public." Even the district court found that the evidence (including Angela's own statements that were relayed to Allgrunn by

---

[3] The facts also support the lesser standard of reasonable suspicion, which is required to make a lawful investigative detention, for all the crimes addressed in this section. *See United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) ("Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure."); *see Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).

the sheriff dispatcher, Allgrunn's observations on the scene, and objective medical evidence from the hospital) showed that Curtis "was under the influence of drugs and alcohol," meeting the first element. ROA.1762.

As to the second element, though, the district court erred. Allgrunn was faced with an intoxicated, erratic, and belligerent individual standing in a public, residential street who had just run up and down three residential streets at 10 PM on a Sunday night. The district court's analysis of probable cause fails to account for the fact that Allgrunn was aware, based on what the dispatcher had told him, that Terrell had just run up and down three separate residential streets at 10 PM on a Sunday night. ROA.1762-1763. Allgrunn was aware that Curtis' condition was sufficiently disturbing for Angela to call for help, because that was the reason he had been dispatched to Curtis and Angela's location.

Youngblood's presence outside of her home and her statement to Allgrunn, "That's him right there," referring to Curtis, showed that a member of the public had, in fact, been "disturbed or alarmed" by Curtis' actions. In other words, though La. R.S. 14:103(A)(3) merely requires that the suspect's condition "*foreseeably* disturb or alarm the public," Allgrunn personally observed a member of the public who appeared to have ***actually*** been disturbed or alarmed by Curtis' condition and behavior, and who identified Curtis as the source of that disturbance – much more

than the statute requires for a violation. The district court's analysis fails to take this fact into account. ROA.1762-1763.

Curtis also cursed at his wife, stating "she's bullshitting," while he was in this condition in the middle of a public street. The district court's analysis fails to take this fact into account. ROA.1762-1763. Further, this event happened on a public street lined with houses at 10 PM on a Sunday night. Many cars were parked at these homes, indicating that these people were home at the time and could potentially be disturbed or alarmed by something occurring on the street. Curtis was in the street, talking loudly on his cell phone on speakerphone. Thus, it was foreseeable that Curtis' condition and behavior would further disturb or alarm other members of the public in addition to Youngblood.

Under these circumstances, Allgrunn had probable cause to arrest Curtis under La. R.S. 14:103(A)(3). *See State v. Stowe*, 635 So. 2d 168, 172 n.3 (La. 1994); *State v. Trepagnier*, 07-749 (La. App. 5 Cir. 3/11/2008), 982 So. 2d 185, 191-192; *Stringfellow v. City of Ruston*, 2017 WL 3202830 at *15-16 (W.D. La. 2017).

Second, under La. R.S. 14:103(A)(2), it is a crime to disturb the peace by: (1) "Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call[ing] him by any offensive or derisive name, or mak[ing] any noise or exclamation in his presence and hearing

with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty;" in (2) "such a manner as would foreseeably disturb or alarm the public." Curtis' action of loudly exclaiming, while in a public street, that his wife Angela was "bullshitting," with Angela located a few feet from him, provided probable cause to arrest Curtis for this crime. *See Stringfellow*, 2017 WL 3202830 at *15; *Canady v. Prator*, 2015 WL 507883 at *5-6 (W.D. La. 2015).

Third, under La. R.S. 14:97, the crime of simple obstruction of a highway is "the intentional . . . performance of any act on any . . . road, highway, [or] thoroughfare . . . which will render movement thereon more difficult." Fourth, under La. R.S. 14:100.1, the crime of obstructing public passage is to "willfully obstruct the free, convenient, and normal use of any public . . . street . . . road, or other passageway . . . by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon or therein." Curtis was in the street when Allgrunn arrived on the scene, and he made no attempt to move. Instead, he continued talking loudly on his cell phone on speakerphone. His presence in the street would have made it more difficult for a vehicle to pass, providing Allgrunn with probable cause to arrest Curtis for these offenses. *See State v. Green*, 2011-2425 (La. 1/20/2012), 79 So. 3d 1013, 1014.

Fifth, under La. R.S. 14:108, the crime of resisting an officer is "the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest [or] lawful detention . . . when the offender knows or has reason to know that the person arresting [or] detaining is acting in his official capacity." Allgrunn gave Curtis loud verbal commands to come toward him, but Curtis initially walked away from Allgrunn instead of toward him. This act alone constituted resisting Allgrunn while Curtis was being detained. *See Stringfellow*, 2017 WL 3202830 at *16-17.

Then, while Curtis and Allgrunn were in front of Allgrunn's vehicle and Allgrunn was attempting to pat Curtis down, Curtis called for an unknown neighbor of his to "come outside," increasing the potential threat level to Allgrunn. Next, Curtis pulled away from Allgrunn and turned to partially face Allgrunn while he was immediately in front of Allgrunn's vehicle just after Allgrunn ordered him to put his hands behind his back so he could be handcuffed. This conduct was another instance of resisting an officer. *See Stringfellow*, 2017 WL 3202830 at *16-17.

While Allgrunn and Curtis were on the ground, Curtis kept his hands under his body and refused to put them behind his back despite Allgrunn's commands to do so. As shown on video, Curtis stated "I'll put my hands behind my back when you be nice, alright! Be nice!" This was a clear expression of Curtis' current

resistance and his intention to continue to resist. Angela's statement, "Baby, just put your hands behind your back!" further confirms that Curtis was actively resisting by keeping Allgrunn from restraining Curtis' hands behind his back. These actions constituted another instance of resisting an officer. *See Stringfellow*, 2017 WL 3202830 at *16-17.

Finally, Curtis bit Allgrunn's ankle just after Allgrunn was finally able to handcuff Curtis – another instance of resisting an officer, one that also qualifies for the more severe crime of resisting an officer with force or violence under La. R.S. 14:108.2(A)(2) and (3). *See Stringfellow*, 2017 WL 3202830 at *16-17. Accordingly, Allgrunn had probable cause to arrest Curtis for resisting an officer and for resisting an officer with force or violence.

Finally, Allgrunn also had probable cause to take Curtis into protective custody under La. R.S. 28:53. The district court erred by applying a ***subjective*** standard for whether Allgrunn had probable cause to take Curtis into protective custody. ROA.1764.

This analysis is contrary to Fourth Amendment and qualified immunity precedent, which establish an objective standard for probable cause and for the application of qualified immunity. *Devenpeck*, 543 U.S. at 153; *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). This analysis is also contrary to the text of La.

R.S. 28:53, which sets forth an objective "reasonable grounds" standard. At the time,

the statute provided, in pertinent part:

> (L)(1) A peace officer or a peace officer accompanied by an emergency medical service trained technician may take a person into protective custody and transport him to a treatment facility for a medical evaluation when, as a result of his personal observation, the peace officer or emergency medical service technician has ***reasonable grounds*** to believe the person is a proper subject for involuntary admission to a treatment facility because the person is acting in a manner dangerous to himself or dangerous to others, is gravely disabled, and is in need of immediate hospitalization to protect such a person or others from physical harm. The person may be transported only to a treatment facility as defined in R.S. 28:2.
>
> (2) Upon arrival at the treatment facility, the escorting peace officer shall then be relieved of any further responsibility and the person shall be immediately examined by a physician, preferably a psychiatrist, who shall determine if the person shall be voluntarily admitted, admitted by emergency certificate, or discharged.
>
> (3) . . . In taking a person into protective custody the peace officer and emergency medical service technician may take reasonable steps to protect themselves. A peace officer or emergency medical service technician who acts in compliance with this Section is acting in the course of his official duty and shall not be subject to criminal or civil liability as a result thereof. (emphasis added).[4]

Under the correct legal standard, Allgrunn was aware of facts constituting

"reasonable grounds" (*i.e.*, probable cause) to take Curtis into protective custody

under La. R.S. 28:53. Allgrunn knew that Curtis had been drinking and had taken

---

[4]    La. R.S. 28:53(L) has been amended since August 11, 2019. The text quoted above is from the version of the statute in effect as of that date.

pain pills. Allgrunn knew that Curtis had been running up and down three residential streets at 10 PM on a Sunday night. Allgrunn knew that Curtis' condition had been sufficiently disturbing for Curtis' wife Angela to call for help and report the foregoing facts. Allgrunn knew that a neighbor (Youngblood) had apparently been disturbed or alarmed by Curtis' actions such that she came outside her house and pointed to Curtis as Allgrunn arrived. Allgrunn personally observed Curtis' condition and behavior when Allgrunn arrived, and he concluded that Curtis was intoxicated. These facts are sufficient to constitute "reasonable grounds" (*i.e.*, probable cause) to take Curtis into protective custody.

Further, Allgrunn's actions complied with La. R.S. 28:53(L). Allgrunn was accompanied by EMS personnel, who waited at a safe distance from Curtis until Allgrunn secured Curtis. EMS personnel evaluated Curtis and took him to the hospital, with Allgrunn following immediately behind them. A hospital is a "treatment facility" under La. R.S. 28:2(40)(a).

At the hospital, Dr. Krupkin examined Curtis and ran tests on him. Dr. Krupkin concluded that a PEC for Curtis was warranted, and Dr. Krupkin issued a PEC under this same statute. *See* La. R.S. 28:53(A)-(B) and (L)(2) (physician's authority to issue a PEC). In other words, Dr. Krupkin confirmed that, based upon

his medical examination of Curtis, there were "reasonable grounds" (*i.e.*, probable cause) to take Curtis into protective custody because of his condition.

At the "clearly established" step of qualified immunity, Allgrunn had at least arguable probable cause to arrest Curtis for all the crimes set forth above and to take Curtis into protective custody under La. R.S. 28:53, entitling him to qualified immunity. As set forth above, the facts show that it was at least reasonable to conclude that the elements of all these crimes were met and that the elements required for "reasonable grounds" to take Curtis into protective custody under La. R.S. 28:53(L) were met.

Neither the district court nor Curtis has identified precedent clearly establishing that, under the circumstances, there was ***not*** probable cause to arrest Curtis for these crimes or to take Curtis into protective custody under La. R.S. 28:53(L). *See Wesby*, 583 U.S. at 65. In other words, neither the district court nor Curtis has cited any precedent holding that the "particular conduct" of Allgrunn in this case violated the Fourth Amendment. *Cleveland*, 938 F.3d at 677.

Instead of defining clearly established law with specificity, the district court erroneously defined clearly established law at a high level of generality, relying on *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). ROA.1767-1768.

In *Deville* the plaintiff (Deville) was stopped by a police officer (Tarver) for speeding. Under Deville's version of the facts, which the Court accepted as true for summary judgment purposes, Deville had not been speeding, had not refused to sign a traffic ticket, and had resisted arrest only because she believed the arrest was unlawful. One of the officers involved (Marcantel) broke her car window, grabbed her through it, pulled her out of the vehicle, and threw her up against it. *Id.* at 161-163. The court held that under Deville's version of the events, there was a genuine issue of material fact as to whether Tarver had falsely arrested her and whether Tarver and Marcantel had used excessive force against her. *Id.* at 164-169.

*Deville* is distinguishable. *Deville* did not involve undisputed video and audio evidence – unlike this case. There, as to probable cause, Deville showed a genuine dispute of material fact as to whether there was probable cause to arrest her based on her own testimony and other evidence that (1) she had not been speeding and (2) she had never been presented with a traffic ticket to sign, and thus could not have refused to sign any ticket. *See id.* at 165. By contrast, the facts Appellants rely upon for probable cause are shown by undisputed video and audio evidence.

Further, *Deville* did not clearly establish anything relevant to this case. The alleged crimes at issue in that case were "failure to sign a traffic ticket, resisting an officer, and speeding." *Deville*, 567 F.3d at 164-165. This case does not involve

32

failure to sign a traffic ticket or speeding. Thus, *Deville*'s analysis of those offenses is irrelevant to the analysis of the "clearly established" step of qualified immunity in this case.

     *Deville* did not involve disturbing the peace, simple obstruction of a highway, obstructing public passage, interference with a law enforcement investigation, obstructing a fireman or emergency medical services personnel, or Louisiana's protective custody statute, La. R.S. 28:53(L). Thus, *Deville* did not clearly establish anything regarding those matters, all of which are at issue in this case.

     Like *Deville*, this case does involve resisting an officer. But, in *Deville*, the court determined that because there was a genuine issue of material fact as to whether there was probable cause for failure to sign a traffic ticket and speeding, it could not reach the issue of whether there was probable cause to arrest for resisting an officer. *See id.* at 164-165. Thus, *Deville* does not clearly establish anything regarding the circumstances under which a suspect's actions constitute the crime of resisting an officer.

***Probable Cause as to Angela:*** As with Curtis, under the proper legal standard and considering all relevant facts, Allgrunn had probable cause to arrest Angela for multiple crimes.[5]

First and second, as with Curtis, Allgrunn had probable cause, or alternatively arguable probable cause, to arrest Angela for the offenses of (1) simple obstruction of a highway and (2) obstructing public passages under La. R.S. 14:97 and 14:100.1. Because Angela and Curtis' actions were identical in this respect, the analysis of probable cause for these crimes is the same for Angela as it was for Curtis. *See Green*, 79 So. 3d at 1014.

Third, La. R.S. 14:329(A) provides that the crime of interfering with a law enforcement investigation is "the intentional interference or obstruction of a law enforcement officer conducting investigative work at the scene of a crime ... by refusing to move or leave the immediate scene of the crime ... when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties." Allgrunn had probable cause to arrest Angela for interfering with a law enforcement investigation after each of the following actions she took:

---

[5]    As with the facts supporting both probable cause and reasonable suspicion as to Curtis, the facts also all support the lesser standard of reasonable suspicion as to Angela. *See Estrada*, 459 F.3d at 631.

34

- Refusing to back up despite Allgrunn's commands to do so while Alllgrunn was attempting to subdue the actively resisting Curtis;

- After Curtis was handcuffed, continually speaking loudly on her cell phone and to Youngblood, plus shouting distracting and derisive comments at Allgrunn, all while Allgrunn was trying to converse with the dispatcher on his radio;

- Interrupting Allgrunn and attempting to talk over him while Allgrunn was trying to converse with EMS personnel, despite Allgrunn's orders to be quiet; and

- Refusing to move back and away from where EMS personnel were located despite Allgrunn's commands to do so. DEF 176 at 0:02:15-0:12:45.

Each of these actions independently provided probable cause to arrest Angela under La. R.S. 14:329(A). But, especially when taken together (*i.e.*, considering the "totality of the circumstances"), these actions clearly provided probable cause to arrest Angela. *Wesby*, 583 U.S. at 57; *Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022); *Robertson v. Town of Washington*, 2015 WL 1564888 at *1-3 (W.D. La. 2015); *DeRamus v. City of Alexandria*, 2016 WL 285150 at *3 (W.D. La. 2016); *Stringfellow*, 2017 WL 3202830 at *16 n.25.

The district court denied Allgrunn qualified immunity as to Angela's false arrest claim because it found the following "genuine issues of fact" as to this issue:

> whether [Angela] was standing too close to the medics as they evaluated [Curtis]; whether [Angela] was standing too close to Allgrunn while he was arresting [Curtis]; whether freezing or hesitating for six seconds amounts to a refusal to move; and whether [Angela] interfered with Allgrunn and the emergency responders by acting or speaking in an offensive manner. ROA.1766.

This analysis is wrong. As to the district court's findings of "genuine issues of fact," this formulation of the summary judgment standard is wrong, because genuine issues of *material* fact are required to deny summary judgment. FRCP 56(a).

As to the four specific "genuine issues of fact" the district court identified, these are not disputed facts, but rather are purportedly disputed *interpretations* of undisputed facts shown on the video. It is undisputed that Angela was standing close to the medics as they evaluated Curtis and to Allgrunn as he was arresting Curtis, as shown on the video; whether she was standing *too* close is a matter of interpretation of this undisputed fact. It is undisputed that Angela did not immediately move when Allgrunn gave her numerous commands to do so on multiple occasions, as shown on the video; whether this constituted a "refusal to move" is a matter of interpretation of this undisputed fact. It is undisputed that Angela spoke loudly numerous times while Allgrunn was trying to speak with EMS personnel, and that Allgrunn told her

to back away, as shown on the video; whether Angela's actions constituted "interference" is a matter of interpretation of this undisputed fact.

Further, with respect to these four purportedly disputed facts, the district court failed to apply both the Fourth Amendment standard and qualified immunity properly. The district court's own conclusion that these issues are genuinely disputed and that neither Appellants nor Angela were entitled to summary judgment on this issue means that a trier of fact could reasonably conclude in favor of either side on each of these four issues. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Thus, the district court's own conclusion means that a trier of fact, sitting in the comfort of either a jury deliberation room or a judge's chambers and watching the video of the incident repeatedly, could reasonably interpret the video as showing that: Angela was standing too close to the medics and to Allgrunn; that Angela's failure to move constituted a refusal to move; and that Angela's actions and words interfered with Allgrunn and EMS personnel. ROA.1766. If that is the case, then at the first step of qualified immunity, it was reasonable for Allgrunn to conclude that probable cause existed to arrest Angela under La. R.S. 14:329 when these events were rapidly unfolding before him during the incident at issue. Under the objective

Fourth Amendment standard, the undisputed video evidence of the incident shows that Allgrunn had probable cause to arrest Angela under La. R.S. 14:329.

Further, as with the district court's analysis of probable cause as to Curtis, the district court's analysis fails to define clearly established law at the required level of specificity. The district court acknowledged that multiple federal district courts "have found that refusing to move and/or cursing at an officer may lead to an arrest" under La. R.S. 14:329. ROA.1766. But, the district court referenced some other cases – without citing them – indicating that La. R.S. 14:329 is most often invoked in the context of a riot. ROA.1766. Undersigned counsel has not been able to locate such cases.

Even if there are such cases, they are irrelevant. The question at the second step of qualified immunity is whether precedent existed at the time of this incident addressing the "*particular* conduct" of Allgrunn that would have indicated to "every reasonable official" that Allgrunn's actions were unlawful (*i.e.*, precedent showing that he did **not** have probable cause to arrest Angela under La. R.S. 14:329 under the facts). *Mullenix*, 577 U.S. at 11-12. Neither the district court nor Angela has identified any such precedent.

Fourth, La. R.S. 14:327(A) provides that the crime of obstructing a fireman or emergency medical services personnel is "hindering, delaying, hampering,

interfering with, or impeding" their progress "while in the performance of [their] official duties." The EMS personnel who arrived in an ambulance were clearly acting in the performance of their official duties after Angela's 911 call. After the medics arrived, Allgrunn told Angela to walk away and "go over there" out of the way multiple times. Allgrunn specifically told her that she was interfering. Yet, she continually ignored multiple commands to back away while the medics tried to examine Curtis, and while Allgrunn was attempting to converse with them about what had occurred and what was going to be done with Curtis. At the first step of qualified immunity, these facts provided Allgrunn with probable cause to arrest Angela under La. R.S. 14:327(A).

The district court erred at the second step of qualified immunity as to the analysis of La. R.S. 14:327(A) as well. The district court observed that it was only able to find one case in which a court found that probable cause existed under La. R.S. 14:327. ROA.1766.

While this may be true, it does not show that it was "clearly established" that Allgrunn's actions violated the Fourth Amendment. In fact, a lack of jurisprudence interpreting this statute **strengthens** Allgrunn's argument at the second step of qualified immunity. The question at this step is whether precedent existed at the time of this incident addressing the "*particular* conduct" of Allgrunn that would have

indicated to "every reasonable official" that Allgrunn's actions were unlawful (*i.e.*, precedent showing that he did ***not*** have probable cause to arrest Angela under La. R.S. 14:327). *Mullenix*, 577 U.S. at 11-12. Neither the district court nor Angela has identified any such precedent.

### C. The district court erred at both steps of the qualified immunity analysis on Curtis and Angela's Fourth Amendment excessive force claims.

To prevail on their excessive force claims, Appellants must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole*, 691 F.3d at 628.

With probable cause to arrest, an officer may use reasonable force to make that arrest. The "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether a particular use of force is reasonable depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397 (internal quotations and citations omitted). The "focus is on the officer['s] reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

Again, at the second step of the qualified immunity analysis, the "clearly established standard … requires that the legal principle [the officer is alleged to have violated] clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be … well defined … [which] requires a high degree of specificity." *Wesby*, 583 U.S. at 63. The "specificity of the rule is especially important in the Fourth Amendment context." *Rivas-Villegas*, 142 S. Ct. at 8.

***Curtis' Excessive Force Claim:*** Curtis' excessive force claim must be assessed at three different stages of the incident: (1) when Curtis pulled away and Allgrunn took Curtis to the ground; (2) when Curtis actively resisted handcuffing

41

while on the ground and Allgrunn delivered several strikes to try to gain compliance; and (3) when Curtis bit Allgrunn immediately after Allgrunn was finally able to handcuff Curtis, and Allgrunn struck Curtis once on the mouth. Further, both (1) the three *Graham* factors and (2) other important factors under this Court's jurisprudence must be considered.

At the first step of qualified immunity, the facts show that Allgrunn's use of force on Curtis was reasonable. Allgrunn began his interaction with Curtis with calm, verbal requests for information and compliance. In response, Curtis dismissed Allgrunn and tried to walk away and ignore him. Allgrunn's verbal entreaties elevated to loud commands and a threat of arrest if Curtis refused to comply. Allgrunn got Curtis to the front of Allgrunn's vehicle and attempted to search Curtis.[6] Curtis yelled for a neighbor (apparently a male named "Dick") to come outside. This increased the threat level to Allgrunn, who was the only officer present.

As he was being searched, Curtis lifted his hands from the car and tried to turn around toward Allgrunn. Allgrunn told Terrell to put his hands behind his back and tried to handcuff him. But instead, Terrell turned the other way, and jerked his hands away. As Allgrunn wrote in his arrest report, Curtis "pulled away." ROA.367.

---

[6] "[P]olice officers do not act unreasonably in forcing an individual to lean over his or her patrol car when the officer believes it necessary to gain control." *Hernandez v. City of Lubbock*, 634 F. Appx. 119, 122 (5th Cir. 2015).

In response, Allgrunn used a takedown maneuver to get Curtis under control. While on the ground, Curtis struggled against Allgrunn's attempts to gain control. Curtis hid his hands under his body so he could not be handcuffed. He tried to get up and flip over, attempting to face Allgrunn. The video shows that Allgrunn had to reposition his body during the struggle to gain control over Curtis. Allgrunn delivered several strikes, while repeatedly telling Curtis to put his hands behind his back. Instead, Curtis taunted Allgrunn, stating, "I'll put my hands behind my back when you be nice, alright! Be nice!" During the struggle, Angela was pleading with Curtis, "Baby, just put your hands behind your back" – confirming that Curtis was resisting while on the ground.

When Allgrunn finally got the handcuffs on Curtis, he told Curtis to stand up. Curtis refused and claimed "my back's broke – my back's broke." Then Curtis made a snarling noise, and bit Allgrunn on the ankle. In response, Allgrunn delivered a single strike to Curtis' mouth. Only then did Curtis stop his physical resistance.

As to the first *Graham* factor, the crimes for which Allgrunn had probable cause to arrest Curtis were not particularly severe crimes. However, the "right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Thus, even though the crimes might not have been severe, Allgrunn was still permitted to use force to

effect the arrest of Curtis. Further, once Curtis pulled away from Allgrunn, Curtis was actively resisting Allgrunn's attempts to handcuff Curtis, and Curtis continued to actively resist from that point. Thus, the analysis of the first *Graham* factor must account for the fact that as the incident escalated, the severity of the crimes for which Allgrunn had probable cause to arrest Curtis also escalated. The district court's analysis of the first *Graham* factor does not take this into account. ROA.1771-1772.

As to the second and third *Graham* factors, Curtis' actions posed a threat to Allgrunn's safety and constituted active resistance to Allgrunn. Allgrunn knew that Curtis had taken multiple pills and had been drinking alcohol. Allgrunn knew that Curtis had just been running up and down three residential streets at 10 PM on a Sunday night, with his wife chasing after him. Allgrunn suspected (as it turns out, accurately) that Curtis had taken some other drug as well. These facts all increased the potential threat level to Allgrunn. Once Allgrunn arrived, Curtis repeatedly disobeyed Allgrunn's commands and questioned Allgrunn's actions and commands.

Allgrunn eventually got Curtis in front of Allgrunn's vehicle. Curtis called for a male neighbor to come outside, further increasing the potential threat to Allgrunn, particularly considering that Allgrunn was the only officer present. Then, Curtis pulled away right after Allgrunn told Curtis to put his hands behind his back. Only then did Allgrunn resort to a takedown to get Curtis under control.

The district court's analysis of the second *Graham* factor as to the takedown fails to account for the fact that Curtis' behavior presented a potential threat to Allgrunn. Notably, the district court's analysis fails to account at all for the fact that Curtis called for a male neighbor to "come outside" just before Curtis pulled away from Allgrunn. ROA.1772.

The district court's analysis of the third *Graham* factor as to the takedown actually favors Allgrunn, but the district court reached the wrong legal conclusion based on its own analysis. The district court found that "because Mr. Terrell was jittery, could not stand still, and attempted to look back at Allgrunn on two occasions, a fact finder may determine that Mr. Terrell was resisting arrest." ROA.1772. If that is the case, and a trier of fact could reasonably interpret Curtis' actions as resistance to arrest, then it would be at least reasonable for Allgrunn to interpret these actions by Curtis as resistance to arrest while these events were rapidly unfolding before him. *See Anderson*, 477 U.S. at 248; *Tucker*, 998 F.3d at 176.

Further, the district court's analysis of the takedown fails to account for the fact that Curtis not only "attempted to look back at Allgrunn," but also that Curtis pulled away from Allgrunn while Allgrunn was trying to handcuff Curtis. ROA.1772. This failure combines two independent legal errors: (1) omitting key events shown on video; and (2) failing to focus on the officer's reasonable perception

of the events at issue, as they happened. *See Poole*, 691 F.3d at 630; *Tucker*, 998 F.3d at 176.

Allgrunn's actions constituted a "measured and ascending" response to Curtis' "escalating verbal and physical resistance." *Poole*, 691 F.3d at 629. Under the full circumstances shown on the video, it was reasonable for Allgrunn to perform a takedown to gain control of Curtis before another individual came outside to help Curtis or the incident escalated further. *See Griggs*, 841 F.3d at 313-315; *Tucker*, 998 F.3d at 175-181; *Betts v. Brennan*, 22 F.4th 577, 582-584 (5th Cir. 2022); *Solis v. Serrett*, 31 F.4th 975, 981-983 (5th Cir. 2022).

In assessing the third *Graham* factor as to the force Allgrunn used while Curtis was on the ground, the district court concluded that "the Court is not able to see whether, when on the ground, Mr. Terrell was resisting arrest and, if so, to what extent." ROA.1772-1773. This analysis is wrong.

While every event that occurred while Curtis was on the ground is not entirely visible on the video, the video "blatantly contradict[s]" any contention that Curtis was not actively resisting while on the ground. *Scott*, 550 U.S. at 380. Curtis' own words "blatantly contradict" such a contention, because Curtis said, "I'll put my hands behind my back when you be nice!" in response to Allgrunn's multiple

commands to put his hands behind his back – a clear expression of Curtis' then-existing active resistance and his intention to continue doing so.

Angela's own words similarly show that Curtis was actively resisting while on the ground, because she told Curtis, "Baby, just put your hands behind your back!" while Curtis was on the ground and Allgrunn was telling Curtis to put his hands behind his back. Further, the fact that Allgrunn had to reposition his body during the struggle with Curtis from facing straight down Pine Street at the beginning of the struggle to facing perpendicular to Pine Street at the end of the struggle shows that Curtis was actively resisting Allgrunn's attempts to handcuff him. In their affidavits, neither Angela nor Curtis denies that Curtis was actively resisting while on the ground. ROA.963-964, 978-979. Finally, the video shows Curtis bite Allgrunn and shows Allgrunn's single punch to end Curtis' resistance.

From these facts, all of which are shown on video, the only reasonable conclusion that a trier of fact could reach is that Curtis actively resisted Allgrunn, both before Allgrunn was able to handcuff Curtis (by keeping his hands away from Allgrunn and refusing multiple commands to put them behind his back) and after Allgrunn was able to handcuff Curtis (by biting Allgrunn). Under the circumstances, facing an actively resisting, drunk, and obstinate individual, Allgrunn's delivery of several strikes with limited wind-up to attempt to overcome Curtis' active resistance

on the ground was reasonable. *See Tucker*, 998 F.3d at 181-185; *Griggs*, 841 F.3d at 315. Under the circumstances, Allgrunn's use of a single punch to Curtis' face to stop Curtis from continuing to bite him was reasonable. *See Griggs*, 841 F.3d at 315-316. The district court erred in concluding otherwise.

An additional factor in determining the reasonableness of an officer's use of force is the extent of the plaintiff's injury. Curtis' only injury was a "busted lip," which Curtis incurred after Allgrunn struck Curtis once to stop Curtis from continuing to bite Allgrunn. This injury is a minor injury under binding precedent. *See Solis*, 31 F.4th at 981-982; *Buehler*, 27 F.4th at 983. Curtis' claimed psychological injuries are also minor – particularly when Curtis already suffered from psychological distress and substance abuse before Allgrunn arrived. *See Solis*, 31 F.4th at 981-982; *Buehler*, 27 F.4th at 983.

At the "clearly established" step of qualified immunity, Curtis failed to meet his burden of citing to precedent "clearly prohibit[ing] [Allgrunn's] conduct in the particular circumstances before him." *Wesby*, 583 U.S. at 63-64. In fact, this Court's precedent shows that Allgrunn did not violate clearly established law.

In *Griggs*, 841 F.3d at 313-316, this Court held that an officer's takedown of a drunk and obstinate individual who pulled away while the officer was attempting to handcuff him did not violate clearly established law. The officer's use of "non-

deadly punches to gain control of the arms of [the] drunken, actively resisting suspect" while they were on the ground also did not violate clearly established law. *See id.* at 315. Finally, a single punch to the handcuffed suspect to cease his ongoing resistance by kicking the officer after handcuffing also did not violate clearly established law. *See id.* at 315-316.

Appellants cited and discussed *Griggs* extensively in their briefing at the district court. ROA.407-411, 1620-1621. However, the district court did not grapple with *Griggs*, a binding precedent of this Court, at all in its Ruling. ROA.1771-1776.

*Griggs* is extremely similar to this case. As outlined above, each of the three uses of force at issue (the takedown, the strikes while on the ground, and the single strike after handcuffing) align with the facts of *Griggs*. As with the officer in *Griggs*, Allgrunn is entitled to qualified immunity. *See also Poole*, 691 F.3d at 629-633; *Tucker*, 998 F.3d at 175-181; *Betts*, 22 F.4th at 584-586; *Solis*, 31 F.4th at 984-988; *Buehler*, 27 F.4th at 983.

***Angela's excessive force claim:*** The video shows that the extremely limited force used on Angela to accomplish her detention was objectively reasonable. Angela had been constantly non-compliant with Allgrunn's commands to back away. She had repeatedly talked over Allgrunn and EMS personnel. She resisted Allgrunn's attempt to get her into his vehicle. Allgrunn simply grabbed Angela to

get her into his vehicle after she defiantly refused numerous commands. She resisted Allgrunn's attempt to temporarily seize her phone incident to her detention by holding it out from Allgrunn for an extended period, as shown on Allgrunn's back seat video. Angela suffered no physical injuries during the incident. The only injury she claims is psychological distress because of the incident.

At the first step of qualified immunity, the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Angela's psychological claimed injury is minor under this Court's precedent. *See Solis*, 31 F.4th at 981-982; *Buehler*, 27 F. 4th at 983. Thus, the extremely minimal use of force on Angela was objectively reasonable.

At the second step of qualified immunity, neither Angela nor the district court cited any precedent that would put every reasonable officer on notice that Allgrunn's actions violated the constitution. Allgrunn is entitled to qualified immunity on Angela's excessive force claim.

## D. The district Court erred in denying Appellants qualified immunity as to Curtis' malicious prosecution claim.

"Fifth Circuit case law between 2003 (*Castellano*) and 2021 (*Anokwuru*) explicitly denied the possibility of a constitutional malicious prosecution claim . . .

this court's caselaw explicitly disclaimed the existence of a constitutional claim for

malicious prosecution at the time of [the defendant's] alleged conduct in 2018 and

2019 and [the plaintiff] has identified no Supreme Court case law from the same

period acknowledging such a claim." *Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir.

2023).

However, on April 4, 2022, the Supreme Court decided *Thompson*. There, the

Supreme Court held that a Fourth Amendment malicious prosecution claim does

exist, and outlined the elements of such a claim as follows: "(i) the suit or proceeding

was instituted without any probable cause; (ii) the motive in instituting the suit was

malicious, which was often defined in this context as without probable cause and for

a purpose other than bringing the defendant to justice; and (iii) the prosecution

terminated in the acquittal or discharge of the accused." 596 U.S. at 44 (internal

quotations omitted).

As set forth above, there was probable cause to arrest Curtis for multiple

crimes. Further, between the time Curtis was arrested and the time at which Allgrunn

wrote the arrest report for Curtis and dropped him off at the jail, Allgrunn obtained

additional information about Curtis' extensive criminal history, providing further

support for probable cause. *See United States v. Sauls*, 192 Fed. Appx. 298, 299-300

(5th Cir. 2006); *Hansen v. Odin*, 2006 WL 626377 at *3-5 (S.D. Tex. 2006); *United*

*States v. Wilborn*, 2017 WL 761184 at *3-4 (W.D. La. 2017). Thus, Curtis'
malicious prosecution claim fails at the first and second elements.

Further, as this Court held in *Guerra*, this circuit did not recognize such a
claim until *Thompson*. The incident at issue in this case occurred on August 11, 2019,
long before *Thompson* and during the period when this Court did not recognize a
Fourth Amendment malicious prosecution claim. Because this claim did not even
exist in this circuit when the incident occurred, Allgrunn is entitled to qualified
immunity on this claim. *See Guerra*, 82 F.4th at 289.

**E. The district Court erred in denying Appellants qualified immunity as
to the First Amendment retaliation claims.**

In a claim that a plaintiff was arrested in retaliation for the exercise of First
Amendment rights, the plaintiff must prove "the absence of probable cause" for the
arrest. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723-1725 (2019). As discussed above,
there was probable cause to arrest both Curtis and Angela for multiple crimes. Curtis
and Angela's First Amendment retaliation claims fail.

Further, Appellants are entitled to qualified immunity on this claim. There is
no precedent that clearly establishes that Appellants' particular conduct violated any
constitutional right.

**F. The district court erred in denying Henderson and Banta qualified immunity on all federal claims.**

Under § 1983, a plaintiff "must identify defendants who were either personally involved in the [alleged] constitutional violation or whose actions were causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). Further, to prevail on a failure to intervene claim, the plaintiff must prove that a defendant (1) knows that a fellow officer is violating an individual's constitutional rights; (2) is present at the scene of the constitutional violation; (3) has a reasonable opportunity to prevent the harm; and (4) chooses not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

The video shows that Allgrunn was the only officer on the scene during the relevant time frame. Consequently, Henderson and Banta were neither personally involved in any alleged constitutional violations, nor were their actions causally connected to any alleged constitutional violations. Further, none of the elements of a failure to intervene claim are met with respect to Henderson and Banta.

Specifically, Henderson did not arrive until after Allgrunn was able to overcome Curtis' active resistance and handcuff Curtis. By the time Henderson arrived, EMS personnel were already examining Curtis. By the time Henderson arrived and walked up to the scene in front of Allgrunn's vehicle, Allgrunn was

already getting Angela into the back seat of his vehicle on the passenger side. Henderson walked over to that side of the vehicle, and within 1-2 seconds of Henderson reaching that side of the vehicle, Allgrunn was finally able to get Angela into the vehicle. Banta did not arrive until well after Curtis had been handcuffed and after Angela had already been temporarily placed in Allgrunn's vehicle.

Accordingly, Henderson and Banta played no role in the arrest of Curtis, the use of force on Curtis, the temporary detention of Angela, or the minimal force used on Angela to effect that detention. There is no evidence that Henderson or Banta knew that Allgrunn was committing a constitutional violation or that they had an opportunity to intervene and chose not to act. In fact, the undisputed video evidence shows that they did not have an opportunity to intervene, because they arrived after all the events at issue had already occurred.

Furthermore, officers do not have to "accept a suspect's innocent explanation at face value." *Wesby*, 583 U.S. at 67. Instead, an officer "who arrives late to an ongoing police action" can "assume[e] that proper procedures . . . have already been followed. No settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers." *White v. Pauly*, 580 U.S. 73, 80 (2017). Henderson and Banta were not required to believe Curtis or Angela's version of events over that of Allgrunn once they arrived on the scene.

Finally, Henderson and Banta are entitled to qualified immunity. There is no precedent that clearly establishes that their particular conduct violated any constitutional right.

## II.     The district court erred in denying Appellants' qualified immunity and statutory immunity as to the state law claims.

Appellants raised state qualified immunity and statutory immunity under La. R.S. 9:2798.1 and La. R.S. 28:53 as grounds for dismissal of all state law claims. ROA.413. Louisiana law recognizes qualified immunity as to state constitutional claims to the same extent as federal qualified immunity as to federal constitutional claims. *Moresi v. Dept. of Wildlife & Fisheries*, 567 So.2d 1081, 1092-1093 (La. 1990); *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005). Further, Louisiana law provides for statutory immunity under La. R.S. 9:2798.1 as to state tort claims. *See Rombach v. Culpepper*, 2021 WL 2944809 at *9-10 (5th Cir. 2021). Finally, Appellants are also entitled to statutory immunity under La. R.S. 28:53 as to the state law claims.

Because Louisiana applies qualified immunity to state constitutional claims to the same extent as qualified immunity applies to federal constitutional claims, the analysis of Appellants' qualified immunity as to the federal constitutional claims set forth above is equally applicable to Curtis and Angela's state constitutional claims.

Appellants did not violate any state constitutional right, and Appellants did not violate clearly established law as to any state constitutional right. As stated above, neither Henderson nor Banta were even present for the events at issue, and thus could not have committed any constitutional violations or torts.

As to Appellants' immunity under La. R.S. 9:2798.1, Louisiana law did not provide for specific steps that Appellants were required to follow under the circumstances. Instead, Appellants had discretion to act in response to the circumstances facing them, and they were not required to choose the "best" or even a "better" course of action. *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 325 (La. 11/30/1994). Thus, Appellants are entitled to immunity because their actions were "discretionary acts." *See Gregor v. Argenot Great Cent. Ins. Co.*, 2002-1138 (La. 5/20/2003), 851 So. 2d 959, 965.

To overcome this immunity, Appellees were required to show conduct by Appellants that was either (1) "not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists;" or (2) constituted "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. R.S. 9:2798.1(C). There is no evidence of such conduct by Appellants.

Finally, Appellants are entitled to immunity under La. R.S. 28:53(L). As set forth above, there were "reasonable grounds" to take Curtis into protective custody under this statute. Allgrunn also was entitled to "take reasonable steps to protect [himself]" in taking Curtis into custody, which he did by taking the actions addressed above in the section addressing Curtis' excessive force claim. La. R.S. 28:53(L)(3). Appellants are entitled to immunity under La. R.S. 28:53 as to all state law tort claims.

## <u>CONCLUSION</u>

The district court's Ruling should be reversed. Appellants are entitled to qualified and statutory immunity and to dismissal of all claims.

Respectfully submitted,

COOK, YANCEY, KING &
GALLOWAY
A Professional Law Corporation

By: */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-
APPELLANTS JASON ALLGRUNN,
JEFFERY HENDERSON, JR., AND
MICHAEL BANTA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 28th day of December, 2023, I caused the foregoing brief to be served on Plaintiffs-Appellees' counsel through the Court's CM/ECF system, and via email, pursuant to Fifth Circuit Rules 25.2 and 25.2.5.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,955 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  I further certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font, excluding footnotes, which are printed in 12 point Time New Roman font.

Dated:  December 28, 2023

By:  */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA