Case No. 23-30723

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Curtis Terrell; Angela Terrell,
*Plaintiffs-Appellees*,

v.

Jason Allgrunn; Michael Banta; Jeffery Henderson, Jr.
*Defendants-Appellant*s

On Appeal from the U.S. District Court for the Western District of Louisiana, Civil Action No. 5:20-cv-00999

## REPLY BRIEF ON BEHALF OF DEFENDANTS-APPELLANTS

James R. Sterritt, #18447
James Ashby Davis, #37653
COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation
P. O. Box 22260
Shreveport, LA  71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyancey.com
*Attorneys for Defendants-Appellants Jason Allgrunn, Michael Banta, and Jeffery Henderson, Jr.*

Dated: March 1, 2024

# <u>TABLE OF CONTENTS</u>

Table of Contents ...........................................................................................i

Table of Authorities ............................................................................... ii-v

Introduction ................................................................................................1

Argument and Authority ...........................................................................2

     A.     Jurisdiction and the standard of review...................................2

     B.     Appellants are entitled to qualified immunity as to Appellees' false arrest claims.....................................................................5

     C.     Appellants are entitled to qualified immunity as to Appellees' excessive force claims ..........................................................16

     D.     Appellants are entitled to qualified immunity as to Curtis' malicious prosecution and First Amendment retaliation claims .........................26

     E.     Henderson and Banta are entitled to qualified immunity as to all claims against them, including the failure to intervene claim.............26

     F.     At the district court, Appellees raised qualified and statutory immunity as to all claims asserted against them ................................27

     G.     Appellants did not waive any arguments by purportedly failing to cite the record ...........................................................................29

Conclusion .................................................................................................30

Certificate of Service ................................................................................31

Certificate of Compliance .........................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Addington v. Wells*, 2023 WL 2808466 at *4-5 (5th Cir. 2023).................................3

*Alexander v. City of Round Rock*, 854 F.3d 298, 301-302 (5th Cir. 2017) ....... 24-26

*Bailey v. Iles*, 87 F.4th 275, 287 (5th Cir. 2023) ................................................. 13-14

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ...................................................................3

*Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022)............................................. 3, 24-25

*Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) .........................................................5

*Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022)............................................. 11-12, 18

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008)...........................................................15

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) ........................... 4, 18-20

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-324 (1986).........................................28

*Craig v. Martin,* 49 F.4th 404, 407-420 (5th Cir. 2022)............................................3

*Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 725 (5th Cir. 2018)......... 22-24

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ..........................................................5, 10

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) ................................................15

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ............................. 1-2, 5, 13, 27

*Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)..............................................17

*Garcia v. Blevins*, 957 F.3d 596, 601(5th Cir. 2020) ....................................... 16, 26

*Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014) ......................................................16

*Graham v. Connor,* 490 U.S. 386 (1989) ................................................17-18, 20-21

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016)................................2, 21-22, 24-25

*Grisham v. Valenciano*, 2024 WL 769485 at *3 (5th Cir. 2024) .............................4

*Massey v. Wharton*, 477 Fed. Appx. 256 (5th Cir. 2012)........................................16

*McClelland v. Katy Ind. Sch. Dist.*, 63 F.4[th] 996,1006 (5th Cir. 2023) ..................28

*Mullenix v. Luna*, 577 U.S. 7 (2015) ............................................................... 13, 22

*Nieves v. Bartlett,* 139 S. Ct. 1715 (2019) ..............................................................26

*Perry v. City of Bossier*, 2018 WL 5074674 (W.D. La. 2018)................................26

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012)............................ 1, 8, 18

*Sam v. Richard*, 867 F.3d 710 (5th Cir. 2018)....................................................25-26

*Scott v. Harris*, 550 U.S. 372 (2007) .......................................................................3-4

*Smith v. Lee*, 73 F.4[th] 376, 385-387 (5th Cir. 2023) ................................................3

*Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022).......................................3-4, 18, 21, 24

*State v. Stowe*, 653 So. 2d 168 (La. 1994) ............................................................ 9-10

*State v. Trepagnier*, 07-749 (La. App. 5 Cir. 3/11/2008), 982 So. 2d 185............ 8-9

*Stringfellow v. City of Ruston*, 2017 WL 3202830 (W.D. La. 2017) .....................10

*Thompson v. Clark*, 596 U.S. 36 (2022) .................................................................26

*Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021)........................... 1, 3, 22

*Turner v. Driver*, 848 F.3d 678, 683-687 (5th Cir. 2017) ................................. 15-16

*Walls v. Sheriff's Office of Caddo Par.*, 2023 WL 8451219 (5th Cir. 2023) ..........26

*White v. Pauly*, 580 U.S. 73, 80 (2017) ..................................................................27

## **Statutes**

La. R.S. 14:103(A)(2-3) ...................................................................... 6, 8-9

La. R.S. 14:327 ................................................................................. 11-12

La. R.S. 14:329 ................................................................................. 11-12

La. R.S. 28:53 ...................................................................... 2, 6, 10-11, 16

## **INTRODUCTION**

In their Appellant Brief, Deputy Jason Allgrunn ("Allgrunn"), Deputy Jeffery Henderson, Jr. ("Henderson"), and Sergeant Michael Banta ("Banta") (collectively, "Appellants") showed that the district court erred in denying them qualified immunity as to all of Appellees Curtis Terrell ("Curtis") and Angela Terrell's ("Angela") ("Appellees") federal and state constitutional claims and statutory immunity as to all state tort claims.

On appeal, Appellees repeat the district court's legal errors:

- Appellees ignore multiple facts shown by undisputed video and audio evidence, thereby losing sight of the "totality of the circumstances" confronting Appellants. *See Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012); *District of Columbia v. Wesby*, 583 U.S. 48, 60-61 (2018).

- Appellees ignore the proper "focus" of the Fourth Amendment standard, which "is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021); *Wesby*, 583 U.S. at 56-57.

1

- Appellees define "clearly established" law at a high level of generality, rather than defining it with "specificity," which is "especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 63-64.

- Appellees apply a subjective standard to whether there was probable cause to take Curtis into protective custody under La. R.S. 28:53, rather than the objective standard required under the Fourth Amendment and the statute itself.

- Appellees fail to address this Court's binding decision in *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016) at all. Under *Griggs*, the force used on Curtis was not excessive, nor did it violate "clearly established" law.

Below, Appellants address each of these legal errors in the context of the various claims Appellees assert. Under the proper legal standards, Appellants are entitled to qualified immunity and statutory immunity because there was probable cause as to both Curtis and Angela, the force used on Curtis and Angela was objectively reasonable, and none of the Appellants violated clearly established law.

## ARGUMENT AND AUTHORITY

### A. Jurisdiction and the standard of review.

*Jurisdiction:* The Court has jurisdiction over this appeal. This appeal is based on the district court's numerous legal errors in denying Appellants' qualified

immunity. Thus, this appeal turns on "an issue of law." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). Specifically, the district court committed legal errors by applying a subjective rather than an objective Fourth Amendment standard; improperly defining "clearly established" law at a high level of generality; ignoring multiple material facts shown by undisputed video and audio evidence; and failing to properly apply (or, in some cases, even address) binding Supreme Court and Fifth Circuit precedent.

This Court regularly exercises jurisdiction over and decides qualified immunity interlocutory appeals under such circumstances. *See Solis v. Serrett*, 31 F.4th 975, 978-988 (5th Cir. 2022); *Betts v. Brennan*, 22 F.4th 577, 584-586 (5th Cir. 2022); *Craig v. Martin*, 49 F.4th 404, 407-420 (5th Cir. 2022); *Smith v. Lee*, 73 F.4th 376, 385-387 (5th Cir. 2023); *Tucker*, 998 F.3d at 175-185; *Addington v. Wells*, 2023 WL 2808466 at *4-5 (5th Cir. 2023); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007).

**Standard of Review:** Throughout Appellees' Brief, Appellees invoke the requirements that at the summary judgment stage, the Court must accept the plaintiff's version of the disputed facts as true and that the evidence must be viewed in the light most favorable to the nonmoving party.

3

Appellees misapply these rules by failing to recognize how undisputed video and audio evidence, the Fourth Amendment standard, and qualified immunity affect their application. When there is undisputed video and audio evidence, as in this case, the Court "must 'vie[w] the facts in the light depicted by the videotape' that captured the events underlying Plaintiffs' claims." *Grisham v. Valenciano*, 2024 WL 769485 at *3 (5th Cir. 2024), *citing Scott*, 550 U.S. at 381. The Court must "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Further, in applying the objective Fourth Amendment standard and qualified immunity, the Court must "view an officer's actions from that officer's point of view without the benefit of hindsight," judging the officer's actions from the officer's "point of view at the very moment [the officer] acted." *Solis*, 31 F.4th at 978.

Given the undisputed summary judgment evidence in this case, particularly the audio and video evidence, the Court's task is to apply the objective Fourth Amendment standard to these undisputed facts, viewing those facts from Appellants' point of view at the very moment they acted. The district court applied incorrect law to a limited subset of facts while erroneously ignoring the totality of the circumstances shown by the undisputed video and audio evidence. Under a proper

4

application of relevant legal standards and a *de novo* review, the district court's erroneous ruling denying qualified immunity should be reversed.

## B. Appellants are entitled to qualified immunity as to Appellees' false arrest claims.

Under the proper objective Fourth Amendment standard rather than the subjective standard the district court applied, "to determine whether an officer had probable cause for an arrest, [the court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018); *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

*Curtis' false arrest claim:* Under the objective Fourth Amendment standard and the complete facts in the summary judgment record, there was probable cause, or alternatively at least arguable probable cause, to arrest Curtis for multiple crimes. *See Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). This brief focuses on (1) probable cause as to the crime of disturbing the peace by "appearing in an intoxicated condition" in "such manner as would foreseeably disturb or alarm the public" under La. R.S. 14:103(A)(3); and (2) probable cause to take Curtis into protective custody under La. R.S. 28:53.

As to disturbing the peace under La. R.S. 14:103(A)(3), Appellees commit the same error as the district court by omitting material undisputed facts. [Appellees' Brief at p. 22-26 of 63]. Specifically, Appellees fail to recognize any of the following undisputed facts:

- Before Allgrunn arrived at the scene of this incident, he knew that Curtis had been drinking, had taken numerous pain pills, and had been running up and down three residential streets late on a Sunday night with Angela chasing after him immediately before Allgrunn's arrival. Angela herself was the source of this information. DEF 175 at 71, 70, 69, 68, 66.

- As soon as Allgrunn arrived on the scene, a neighbor spoke to Allgrunn and pointed at Curtis, stating "That's him right there" – providing a clear indication to a reasonable officer on the scene that Curtis' actions had disturbed the neighbor. DEF 176 at 0:00:58-0:01:15.

- Curtis was in Pine Street when Allgrunn arrived, speaking loudly on his cell phone with the phone on speakerphone at a loud volume. *Id.* at 0:01:20-0:01:34.

- Despite Allgrunn's command, "Sir, come here," Curtis initially refused to come toward Allgrunn and took two steps away from Allgrunn. *Id.* at 0:01:20-0:01:34.

6

- Curtis used offensive and derisive language in a public place when he exclaimed that his wife was "bullshitting" while he was standing in Pine Street. *Id.* at 0:01:34-0:01:45.

- Curtis was intoxicated throughout the incident, as Allgrunn observed and as even the district court found. ROA.351, 354, 356, 367, 383.

Appellees claim that the area in question was a "rural area." But the video shows that there were multiple houses on Pine Street in the immediate vicinity of the incident scene, with multiple cars parked in front of those houses, indicating that residents were home late on the Sunday night in question. As shown on video, the incident scene was a populated area, not a "rural area." DEF 176 at 0:00:58-0:01:15.

Appellees claim that Appellants' arguments rely on "their characterization of the facts." [Appellees' Brief at p. 25 of 63]. But the facts identified above are not mere "characterizations" of the facts. They are undisputed facts shown by video and audio evidence. The district court and Appellees committed legal error by "omi[tting] [these] key events as depicted by the videotape." *Poole*, 691 F.3d at 630 (internal quotations omitted).

Appellees assert that "much" of Curtis' "interactions with Officer Allgrunn were protected by the First Amendment." [Appellees' Brief at p. 24 of 63]. But this

assertion erroneously treats First Amendment rights as unlimited, and it ignores Curtis' ***actions*** – not just words – described above.

Considering all the facts, Allgrunn had probable cause, or alternatively at least arguable probable cause, to arrest Curtis for the crime of "appearing in an intoxicated condition" in "such manner as would foreseeably disturb or alarm the public" under La. R.S. 14:103(A)(3). In *State v. Trepagnier*, 982 So. 2d 185 (La. App. 5 Cir. 3/11/2008), the Louisiana Fifth Circuit Court of Appeal affirmed the defendant's conviction for disturbing the peace in violation of La. R.S. 14:103(A)(3). There, an investigating officer responded to a complaint about a domestic disturbance at 5 PM on June 18, 2006. When the officer arrived at the scene, the defendant "smelled of alcohol, slurred his speech, and refused or was unable to stand, when requested." *Id.* at 191. The defendant also "was lying under a tree in an open field, behind or adjacent to his residence, bounded on one side by a public road . . . [with the defendant's house located] directly across the street from and next door to other houses." *Id.* at 192. The court held that "even if the tree was in his 'backyard,' defendant was found lying on his back cursing, in an open field on the edge of a public road, which could foreseeably disturb or alarm the public, including the residents of the neighboring houses or people using the public road." *Id.*

This case presents an even stronger case as to La. R.S. 14:103(A)(3) than *Trepagnier*. Here, Curtis' actions took place ***in*** public roads and not merely adjacent to a public road (*i.e.*, in Pine Street and the nearby streets that he had been running up just before Allgrunn's arrival). The incident took place at nearly 10 PM (*i.e.*, late at night) and not at 5 PM, thereby heightening the foreseeability of a disturbance caused by Curtis' conduct. A neighbor was present at Allgrunn's arrival, and the neighbor pointed to Curtis when Allgrunn arrived, stating "That's him right there." An officer on the scene could reasonably interpret this fact as an indication that the neighbor had ***actually*** been disturbed by Curtis' actions – more than the mere "foreseeability" of a disturbance that the statute requires, and more than the arresting officer had in *Trepagnier*. There were multiple cars parked in the immediate vicinity of the incident scene at houses on Pine Street, indicating that residents were home.

If the facts of *Trepagnier* were sufficient evidence to justify the defendant's conviction beyond a reasonable doubt for disturbing the peace under La. R.S. 14:103(A)(3), then the facts of this case are sufficient to constitute probable cause, or at least arguable probable cause, to arrest Curtis for that offense. *See also State v. Stowe*, 635 So. 2d 168, 172 n.3 (La. 1994) ("defendant's offensive and derisive language in the middle of a public highway, plus his visibly intoxicated condition," meant that the police officer at the scene "was justified in believing that defendant

was "acting 'in a manner which would foreseeably disturb or alarm the public'");
*Stringfellow v. City of Ruston*, 2017 WL 3202830 at *15-16 (W.D. La. 2017).

As to whether there was probable cause to take Curtis into protective custody under La. R.S. 28:53, Appellees repeat the district court's legal error in applying a subjective standard to this issue. Specifically, Appellees quote the district court's statement that reliance on La. R.S. 28:53 is merely a "post-hoc justification" for taking Curtis into custody, and that this statute cannot form a basis for probable cause. [Appellees' Brief at p. 31 of 63; ROA.1764.].

But *Devenpeck* expressly permits officers to justify taking someone into custody based on what the district court referred to as a "post-hoc justification." 543 U.S. at 153. If the district court's subjective standard applied, then "the constitutionality of an arrest under a given set of known facts will 'vary from place to place and from time to time.'" *Id.* at 154. Further, La. R.S. 28:53 itself established an objective, "reasonable grounds" standard.

The question, then, is whether "reasonable grounds" (*i.e.*, probable cause) existed to take Curtis into protective custody under La. R.S. 28:53. As set forth in Appellants' Brief on pages 39-42 of 71, under the facts shown by undisputed audio and video evidence, there was probable cause to take Curtis into protective custody under La. R.S. 28:53.

***Angela's false arrest claim:*** There was probable cause, or alternatively at least arguable probable cause, to arrest Angela for multiple crimes. This brief focuses on interfering with a law enforcement investigation under La. R.S. 14:329(A) and obstructing emergency services personnel under La. R.S. 14:327(A).

Appellees assert that Angela's actions were "all protected by the First Amendment." [Appellees' Brief at p. 35 of 63]. This argument is wrong. Angela's actions far exceeded merely filming Allgrunn or criticizing him. When an individual's actions that may be protected by the First Amendment in other contexts cross into interfering with the police, such actions are sufficient to constitute probable cause to arrest. In *Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022), the plaintiff (Buehler) was the president of a "police watchdog" organization. Late one night, he was filming the police on a pedestrian street. Video showed Buehler repeatedly refuse to back away despite instructions to do so. Buehler was standing close to the officers, on many occasions only a few feet away or less. After multiple warnings, Buehler was arrested. *Id.* at 977-978. In his subsequent lawsuit, this Court held that there was probable cause to arrest Buehler for interference with the officers' public duties in violation of Texas Penal Code § 38.15(a)(1). The Court held that Buehler's actions in "refusing to obey police officers' repeated and unambiguous

warnings to step back so as not to interfere with officers' official duties" constituted probable cause to arrest him for violating that statute. *Id.* at 992.

There is no material distinction between the Texas statute at issue in *Buehler* and La. R.S. 14:329(A). Like Buehler, Angela refused to move away from Allgrunn and Curtis, and later the EMS personnel, despite multiple commands from Allgrunn to do so. As in *Buehler*, Angela's actions are all shown on video. Allgrunn had probable cause to arrest Angela for a violation of La. R.S. 14:329(A). Notably, though Appellants cited *Buehler* in their MSJ briefing at the district court and in their Appellant Brief in this Court, the district court did not address it and Appellees failed to address it in their Appellee Brief as to the issue of probable cause. ROA.401, 1588-1589.

Similarly, as set forth in more detail in Appellants' Brief on pages 49-51 of 71, Angela's actions shown on the video provided Allgrunn with probable cause to arrest her for obstructing emergency services personnel under La. R.S. 14:327(A).

***The arrests of Curtis and Angela did not violate "clearly established" law:*** Appellees' arguments at the second or "clearly established law" step of qualified immunity, like the legal standards the district court applied at this step, are wrong. Specifically, Appellees cite *Bailey v. Iles*, 87 F.4th 275, 287 (5th Cir. 2023) for the proposition that at the second step of qualified immunity, "regardless of the

underlying criminal statute for which probable cause is alleged, a 'warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment,'" thereby depriving the arresting officer of qualified immunity. [Appellees' Brief at p. 37 of 63].

If this assertion were accurate, then no officer who "reasonably but mistakenly concluded that probable cause was present" could ever be entitled to qualified immunity. *Wesby*, 583 U.S. at 65. In other words, Appellees' erroneous version of the second step of qualified immunity is merely a repetition of the first step of qualified immunity. Under *Wesby*, the second step of qualified immunity requires defining "clearly established" law with "a high degree of specificity," something that is "especially important in the Fourth Amendment context." 583 U.S. at 63-64. This requires citation to precedent addressing the "*particular* conduct" of the officer in question that would have indicated to "every reasonable official" that the officer's actions were unlawful. *Mullenix*, 577 U.S. at 11-12.

Further, Appellees' selective quote from *Bailey* ignores both preceding portions of *Bailey* and the very next sentence of *Bailey*. As the Court held earlier in *Bailey*, "Iles [the officer] is 'entitled to qualified immunity unless there was no actual probable cause for the arrest" **and he was "objectively unreasonable in believing there was probable cause for the arrest**." *Bailey*, 87 F.4th at 287 (emphasis

added). In the sentence immediately following Appellees' selective quote from *Bailey*, the Court held, "Second, whether it was 'objectively reasonable' for [the officer] to believe there was probable cause is 'assessed in light of legal rules clearly established at the time of the incident,' which includes the statute's text and state case law interpreting it." *Id.*

Thus, Appellees simply ignore the question at the second step of qualified immunity of whether Allgrunn's actions were "objectively reasonable" even if Allgrunn did not have probable cause to arrest Curtis or Angela at the first step of qualified immunity (which he did). As stated in *Bailey*, this question requires reference to the text of the criminal statutes at issue and the case law interpreting those statutes. In *Bailey*, the text of the criminal statute at issue, the case law interpreting it, and the factual similarity of *Bailey* to that case law supported the plaintiff's position, not the officer's position. *See* 87 F.4th at 286-287. Here, by contrast, Appellants have analyzed the text of the relevant statutes and cited numerous cases interpreting those statutes under factual circumstances similar to those at issue in this case. [Appellants' Brief at p. 34-51 of 71].

Appellees cite several cases to attempt to meet their burden at the second step of qualified immunity. [Appellees' Brief at p. 24-25 and 36-37 of 63]. But the cases

Appellees cite do not "clearly establish" that there was no probable cause to arrest Curtis or Angela.

As Appellants explained in Appellants' Brief on pages 42-44 of 71, *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) is distinguishable and does not "clearly establish" that the arrest of Curtis or Angela violated the Fourth Amendment.

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) did not involve a Fourth Amendment false arrest claim at all. Before the case ever reached the Fifth Circuit, the plaintiff "abandoned her illegal arrest claim." 513 F.3d at 496.

*Turner v. Driver*, 848 F.3d 678, 683-684 (5th Cir. 2017) involved the arrest of a man (Turner) who had merely been filming a police station from across the street. There was no crime scene, investigation, or other police activity with which Turner's mere filming across the street could possibly have interfered. By contrast, here Curtis had just been arrested after Angela herself had called for assistance because of Curtis' behavior. Angela first refused to back away while Curtis was actively resisting Allgrunn. Later, after Curtis finally stopped resisting, Angela was only a few feet from Allgrunn and EMS personnel and she refused to move away or be quiet despite numerous commands to do so and despite Allgrunn's express warning that she was interfering. DEF 176 at 0:03:30-0:11:56. *Turner* does not clearly establish anything relevant to this case.

*Massey v. Wharton*, 477 Fed. Appx. 256 (5th Cir. 2012), as an unpublished case, "cannot clearly establish the law." *Garcia v. Blevins*, 957 F.3d 596, 601 (5th Cir. 2020). *Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014), as out of circuit authority, cannot clearly establish anything in this circuit.

Notably, Appellees failed to cite any cases addressing the protective custody statute, La. R.S. 28:53, at all – much less any cases that "clearly establish" that there was not probable cause to take Curtis into protective custody under that statute.

### C. Appellants are entitled to qualified immunity as to Appellees' excessive force claims.

In Appellants' Brief, Appellants showed that (1) at the first step of qualified immunity, the force used on Curtis and Angela was reasonable; and (2) at the second step of qualified immunity, the force used on Curtis and Angela did not violate "clearly established" law.

Appellees commit major legal errors in addressing the excessive force claims. First, Appellees argue that "there was no probable cause to believe Mr. Terrell committed any crime," and that "[t]herefore, there was no justification to use any force," because Louisiana law provides citizens with "the right to resist an unlawful arrest." [Appellees' Brief at p. 40 of 71]. But an "excessive force claim is separate and distinct from [an] unlawful arrest claim, and we must therefore analyze the

excessive force claim without regard to whether the arrest itself was justified." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

Second, Appellees assert that "only the three *Graham* factors set by the United States Supreme Court guide the inquiry" into whether the force an officer used was excessive, such that the minimal nature of Curtis' injury and the total lack of any physical injury to Angela cannot be considered in determining whether the force used on Curtis and Angela was excessive. According to Appellees, the severity of the plaintiff's injury is only relevant to "the first element of [the] excessive force inquiry [of] whether the plaintiff suffered more than a de minimis injury," and not to whether the force used was excessive. [Appellees' Brief at p. 43 of 63].

This assertion is contrary to *Graham* itself and to this Court's precedents. *Graham* states that the relevant considerations under the Fourth Amendment standard "include" the three *Graham* factors but does not state that those factors are the only relevant factors. 490 U.S. 386, 396 (1989). In *Buehler*, this Court held that "a reviewing court should consider the seriousness of the alleged injuries in determining whether the officer's conduct was objectively reasonable." 27 F.4th at 982; *see Solis*, 31 F.4th at 981-982 ("the degree of injury—even if minor—[is] interrelated to the reasonableness and excessiveness of the officer's force," and "the limited extent of [the plaintiff's] injuries" in that case "tend[ed] to support a

17

conclusion that the officers acted reasonably"). As Appellants showed on pages 59 and 61 of 71 in their Appellant Brief, the injuries Appellees claim to have suffered are minor, a fact that supports the conclusion that Allgrunn's use of force was reasonable.

***Curtis' excessive force claim:*** Like with Appellees' arguments regarding their false arrest claims, and like the district court, Appellees' account of the facts leaves out numerous undisputed facts shown on the video at every stage of the interaction between Allgrunn and Curtis. Again, "omi[tting] key events as depicted by the videotape" constitutes legal error. *Poole*, 691 F.3d at 630; *Carnaby*, 636 F.3d at 187.

Appellees fail to recognize that, as even the district court described it, Curtis "was jittery, could not stand still, and attempted to look back at Allgrunn on two occasions," permitting "a fact finder [to] determine that Mr. Terrell was resisting arrest." ROA.1772. Again, though these facts are shown by the video, both Appellees and the district court fail to recognize that Curtis did more than just act "jittery" and "look back" at Allgrunn twice. The video shows that Curtis "pulled away" from Allgrunn just before Allgrunn took Curtis to the ground. Plus, this occurred immediately after Curtis had called for "Dick," apparently another male, to "come outside." DEF 176 at 0:02:15-0:02:27; ROA.367, 383.

Appellees assert that when Curtis was on the ground, his "body cannot be seen on video" – apparently contending that it is unclear whether Curtis was actively resisting while on the ground. [Appellees' Brief at p. 43 of 63]. But Appellees, like the district court, ignore Curtis' defiant statement while he was on the ground that, "I'll put my hands behind my back when you be nice" – a clear expression of Curtis' then-existing resistance and his intent to continue resisting despite Allgrunn's command to put his hands behind his back. DEF 176 at 0:02:27-0:02:50. Appellees, like the district court, ignore Angela's plea to Curtis, "Baby, just put your hands behind your back" – yet another confirmation that Curtis was actively resisting while he was on the ground. *Id.* at 0:02:50-0:03:08. Considering these videotaped statements by Appellees themselves, to which the Court must "assign greater weight, even at the summary judgment stage," no reasonable trier of fact could possibly conclude that Curtis was not resisting while on the ground. *Carnaby*, 636 F.3d at 187. Finally, Appellees, like the district court, ignore the fact that their own declarations do not deny that Curtis was actively resisting while on the ground, and that Allgrunn's reports state that Curtis was actively resisting while on the ground. ROA.367, 383, 963-964, 978-979.

As Appellants set forth in detail on pages 51-60 of 71 of their Appellant Brief, under the *Graham* factors and other relevant factors set forth in this Court's

precedents, and considering the complete facts of this incident, the force Allgrunn used on Curtis was reasonable.

***Angela's excessive force claim:*** As to Angela's excessive force claim, Appellees' argument that Angela was merely "hesitant" to "respond to commands or relinquish her phone" is simply wrong under the facts shown by the undisputed video and audio evidence, to which the Court must "assign greater weight, even at the summary judgment stage." *Carnaby*, 636 F.3d at 187; [Appellees' Brief at p. 45 of 63]. Rather than showing mere "hesitance" to comply with Allgrunn's commands, Angela outright refused numerous commands to move away from the scene, both while Curtis was actively resisting and thereafter, when Allgrunn was trying to speak into his radio and to speak to EMS personnel. DEF 176 at 0:02:27-0:12:45. Angela's relentlessly defiant behavior and active resistance to being placed in Allgrunn's vehicle provided ample justification for Allgrunn's use of the very minimal amount of force he used on her to get her into his vehicle – which caused her no physical injuries. *See Graham*, 490 U.S. at 396; *Solis*, 31 F.4th at 981-982.

***The use of force on Curtis and Angela did not violate "clearly established" law:*** Appellees, like the district court, define "clearly established" law at an impermissibly high level of generality with respect to their excessive force claims. It is difficult to imagine a more general and circular way of defining "clearly

20

established" law as to excessive force claims than defining it as "the right to be free from excessive force," like Appellees define it. [Appellees' Brief at p. 46 of 63].

Like the district court, Appellees ignore this Court's binding decision in *Griggs* – even though Appellants devoted extensive briefing to *Griggs* at the district court and at this Court. ROA.407-411, 1620-1621, 1771-1776. Under *Griggs*, it does not violate "clearly established" law to perform a "takedown" maneuver "against a drunken erratic suspect who is resisting arrest." 841 F.3d at 314. Under *Griggs*, it does not violate "clearly established" law to "use non-deadly punches to gain control of the arms of a drunken, actively resisting suspect." *Id.* at 315. Under *Griggs*, it does not violate "clearly established" law for an officer to "deliver a swift punch to [an arrestee's] face" when the arrestee has been handcuffed but is still actively resisting, particularly if that resistance constitutes a "physical assault" against the officer. *Id.* at 316.

The facts of this case, as shown by the video, align with the facts of *Griggs* as to the takedown, the strikes while on the ground, and the single strike to Curtis' face after handcuffing to end ongoing violent resistance. DEF 176 at 0:02:15-0:03:30. Under *Griggs*, Allgrunn is entitled to qualified immunity as to Curtis' excessive force claim.

Appellees cite cases in support of their arguments on the excessive force claims, but none of these cases "clearly establish" that Allgrunn's use of force violated the Fourth Amendment. None of these cases address Allgrunn's "*particular* conduct.*" Mullenix*, 577 U.S. at 11.

Appellees misread and mischaracterize *Tucker*, 998 F.3d at 182, which Appellees claim "is favorable to Mr. Terrell" because "[i]n *Tucker*, this Court held that summary judgment should be denied" as to the excessive force claims. [Appellees' Brief at p. 42 of 63]. That assertion is false – in fact, Appellees quote **the overturned district court opinion** in *Tucker* in their Brief. In reality, in *Tucker*, this Court reversed the district court's opinion denying qualified immunity to the officers and remanded the case to the district court "for entry of summary judgment in favor of Defendant Officers." 998 F.3d at 185.

In *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 725 (5th Cir. 2018), "a large team of heavily armed police officers" executed a no-knock warrant at a home. Two officers had cameras. But there was a 25-second gap in which there was no video of the relevant events, plus an additional 15-second gap in which one of the two videos had no footage of the relevant events. The relevant events in the second video during this time were "totally obscured by the couch" in the home. *Id.* at 725-726.

Darden was one of the individuals in the home. Video showed him raise his hands when the officers arrived. Nonetheless, one officer immediately threw him to the ground. Thereafter, officers used various types of force on him, including choking him, repeatedly punching and kicking him in the face, tasing him multiple times, pressing his face into the ground, and placing him in a choke hold. Witnesses testified that Darden "never made any threatening gestures and did not resist arrest." *Id.* at 726. Eventually, Darden had a heart attack and died. *See id.*

*Darden* is distinguishable. In *Darden*, video evidence showed Darden raise his hands immediately and comply with orders, and witnesses testified during the gaps in the video that Darden did not resist. Here, there is undisputed video and audio evidence showing the entire incident. In *Darden*, there were multiple heavily armed officers present. Here, there was only one officer present when force was used (Allgrunn). *See Betts*, 22 F.4th at 582. In *Darden*, there was no evidence that Darden was intoxicated. Here, Curtis was intoxicated. *See Griggs*, 841 F.3d at 313-316. In *Darden*, the force used as described above was much more severe that the force Allgrunn used as to Curtis (a takedown, several strikes with limited wind up to end active resistance, and one strike post-handcuffing to end violent resistance by biting) and as to Angela (merely grabbing her and placing her in a vehicle). In *Darden*, the

injury was death – the most serious possible injury. Here, Curtis had a busted lip and Angela had no injury. *See Solis*, 31 F.4th at 981-982.

In *Alexander v. City of Round Rock*, 854 F.3d 298, 301-302 (5th Cir. 2017), the plaintiff (Alexander) looked around a hotel parking lot for a stray cat, then got in his car to drive to a parking spot closer to his hotel room. He was pulled over by Officer Garza in the hotel parking lot. Alexander provided Garza with his driver's license but refused to answer questions about what he had been doing. Garza called for backup. Other officers arrived. Alexander refused a request to get out of his car. The officers forcibly pulled Alexander from the car and pinned him face down on the ground. One officer pressed a boot or knee on the back of his neck and mashed his face into the concrete. Alexander did not physically resist.

*Alexander* is distinguishable. As to the use of force on Curtis, unlike Curtis, Alexander was not intoxicated and had not engaged in any erratic behavior like running up three residential streets late at night with his wife chasing him. *See Griggs*, 841 F.3d at 313-316. Unlike Curtis, Alexander did not physically resist by pulling away or otherwise trying to keep from being handcuffed. Unlike Curtis, Alexander did not call for the assistance of an unknown male. Unlike in *Alexander*, where there were numerous officers present with one suspect, in this case, Allgrunn was the only officer on the scene, facing the hostile Curtis and Angela as well as a

24

potentially hostile additional male. *See Betts*, 22 F.4th at 582. As to the use of force on Angela, Allgrunn's action of simply grabbing Angela to affect her detention and place her in the back seat of his vehicle is obviously much different from the force used in *Alexander* as described above.

In *Sam v. Richard*, 867 F.3d 710 (5th Cir. 2018), the plaintiff (Sam) and his friend were suspected of a theft at a nearby Wal-Mart. Officer Richard and at least one other officer, plus a police canine, went to search for the suspected thieves. When officer Richard stopped Sam after a short chase on foot, Sam "lay face down on the ground and put his hands on the back of his head." *Id.* at 712. Nonetheless, Richard "then slapped Sam across the face, kneed him, placed him in handcuffs, and shoved him against a police car." *Id.*

*Sam* is distinguishable for the same reasons *Alexander* is distinguishable as to the use of force on both Curtis and Angela.

*Walls v. Sheriff's Office of Caddo Par.*, 2023 WL 8451219 (5th Cir. 2023), as an unpublished case, "cannot clearly establish the law." *Garcia*, 957 F.3d at 601. *Perry v. City of Bossier*, 2018 WL 5074674 (W.D. La. 2018), as a district court opinion, cannot "clearly establish" anything.

**D. Appellants are entitled to qualified immunity as to Curtis' malicious prosecution and First Amendment retaliation claims.**

Common to both Fourth Amendment malicious prosecution claims and First Amendment retaliation claims is the fact that the existence of probable cause defeats them. *See Thompson v. Clark*, 596 U.S. 36, 44 (2022) (Fourth Amendment malicious prosecution claim); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) (First Amendment retaliation claim). Accordingly, the existence of probable cause or at least arguable probable cause as to Curtis defeats both claims by Curtis, and the existence of probable cause or at least arguable probable cause as to Angela defeats the First Amendment retaliation claim by Angela.

**E. Henderson and Banta are entitled to qualified immunity as to all claims against them, including the failure to intervene claim.**

Appellants provided a detailed analysis of where Henderson and Banta were at each part of the undisputed video and audio evidence on pages 22-23 and 64 of 71 of their Appellant Brief. As set forth therein, Henderson arrived when Angela was already being placed in Allgrunn's vehicle – specifically, in the last 1-2 seconds before the door was shut. Banta arrived even later. Henderson and Banta did not participate in any of the important events of this incident, and they had no opportunity or obligation to intervene.

Appellees' argument that Henderson and Banta should have somehow second-guessed the actions Allgrunn took before they arrived and should have simply freed Curtis and Angela is nonsensical. Officers who arrive late to the scene of an incident cannot be required to investigate and then second-guess the propriety of their fellow officers' actions taken before they arrived. Binding precedent holds that officers have no such obligation. *Wesby*, 583 U.S. at 67; *White v. Pauly*, 580 U.S. 73, 80 (2017).

**F. At the district court, Appellees raised qualified and statutory immunity as to all claims asserted against them.**

In various sections of their Appellee Brief, Appellees assert that Appellants failed to seek dismissal of certain claims at the district court, that Appellants waived the ability to seek dismissal of such claims, and that the Court cannot address such claims.

This assertion is wrong. Appellants raised qualified immunity as to all federal and state constitutional claims and statutory immunity as to all state tort claims. In their MSJ, Appellants "move[d] for summary judgment on all of [Appellees'] claims under both federal and state law," asserting that "[t]here was no violation of the Constitution or any clearly established law, and [Appellants] are entitled to qualified immunity." ROA.323. Appellants asserted that "a reasonable officer could have

believed that defendants' conduct was lawful." ROA.323. In the memorandum in support, Appellants asserted that "[p]robable cause and qualified immunity bar all of plaintiffs' claims under both federal and state law." ROA.396. Appellants further asserted that Curtis and Angela "have no evidence that any defendant 'knowingly violated the law' or that any defendant was 'plainly incompetent.'" ROA.402.

"Once the defense of qualified immunity has been raised, the plaintiff has the burden of" overcoming it at both steps of the qualified immunity analysis. *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1006 (5th Cir. 2023). Further, a summary judgment movant can meet his initial burden by merely pointing to the absence of proof supporting the essential elements of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Appellants raised qualified immunity as to all claims and the absence of evidence supporting all claims.

This assertion is also wrong because the two primary issues in this case are whether there was probable cause and whether the force used was reasonable (as well as the "clearly established" question at the second step of qualified immunity for each of these issues). As set forth above and in Appellants' Original Brief, these issues are dispositive of all of Appellees' claims – not just their false arrest and

excessive force claims. Appellants have unquestionably devoted extensive argument and analysis to these issues.

**G. Appellants did not waive any arguments by purportedly failing to cite the record.**

In various sections of Appellees' Brief, Appellees claim that Appellants' Brief waived various arguments by failing to cite the record on appeal.

This assertion is wrong. Appellants' Brief contains a detailed, 12-page account of the facts in the summary judgment record, including extensive citations to the record on appeal. [Appellants' Brief at p. 14-25 of 71]. The argument section of Appellants' Brief references the same events described in detail in this factual account. Appellants' arguments reference the video of the incident from Allgrunn's dashboard camera (DEF 176) numerous times, some of which include a specific reference to DEF 176 and others which simply reference the "video." [*Id.* at 38, 43, 47-49, 54, 56-58, 60-61, 64, 65 of 71]. These numerous references to the video of the incident are obviously references to Allgrunn's dashboard camera, the primary piece of undisputed evidence in this case. Finally, Appellants' arguments also reference other portions of the summary judgment evidence in the record. [*Id.* at 53, 58 of 71].

## <u>CONCLUSION</u>

The district court's Ruling should be reversed. Appellants are entitled to qualified and statutory immunity and to dismissal of all claims.

Respectfully submitted,

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA 71120-2260
Phone: (318) 221-6277
Fax: (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 1st day of March, 2024, I caused the foregoing brief to be served on Plaintiffs-Appellees' counsel through the Court's CM/ECF system, and via email, pursuant to Fifth Circuit Rules 25.2 and 25.2.5.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: _/s/ James Ashby Davis_
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,499 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  I further certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font, excluding footnotes, which are printed in 12 point Time New Roman font.

Dated:  March 1, 2024

By:  */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA