# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 27, 2024
Lyle W. Cayce
Clerk

No. 23-30723

Curtis Terrell; Angela Terrell,

*Plaintiffs—Appellees,*

versus

Jason Allgrunn; Michael Banta; Jeffery Henderson, Jr.,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:20-CV-999

---

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

After consuming 10 beers, 4 tramadol pills, 10–15 Tylenols, and half a gram of methamphetamine, Curtis Terrell began to run erratically up and down the streets of a residential neighborhood. Angela Terrell, Mr. Terrell's wife, was understandably concerned and called the police. When Officer Jason Allgrunn arrived, he arrested Mr. Terrell, and after Mrs. Terrell went into the middle of the street to film the incident, arrested her as well. The Terrells bring a host of federal and state claims against Allgrunn and other responding officers. The district court denied summary judgment to defendants on every claim. We reverse and render in major part and dismiss the

appeal and vacate and remand in minor part.

I.

On August 11, 2019, Mrs. Terrell called 911 requesting an ambulance because Mr. Terrell had reportedly taken pain pills: "My husband just took some pills, I need you to come get him, please."[1] They had been fighting all day. Mr. Terrell was outside the house running up a residential street. When connected to the sheriff's office, Mrs. Terrell said, "I need an ambulance for my husband, I don't need the sheriff's office." She continued to convey her husband's location to the sheriff's office as he ran around outside and she tried to keep up with him. About a minute later, he was still running up and down the road. The sheriff's office seemed skeptical that pain pills were making him run up and down the street. Mrs. Terrell stated that Mr. Terrell had also been drinking that day. Allgrunn was informed of the nature of the situation as he was en route.

Allgrunn was the first officer to respond. Allgrunn's interaction with the Terrells was largely captured by his dashboard camera. When he arrived, the Terrells were standing on opposite sides of the road's edge, each on a cell phone. Allgrunn parked and exited his vehicle. He approached the pair and asked Mr. Terrell, "you alright?" to which Mr. Terrell responded, "yes, sir." As Mr. Terrell turned and walked away, Allgrunn twice commanded him to "come here," while Mr. Terrell accused Mrs. Terrell of "bullshitting." Mr. Terrell stopped and mumbled an unclear response.

After some back-and-forth discussion, Allgrunn instructed Mr. Terrell to "walk to the front of my vehicle" and warned him that "I am not going

---

[1] The district court provided a generally adequate outline of the relevant facts. What follows is a heavily edited and enriched version of the district court's recounting in light of our view of the record.

2

to tell you again." Mr. Terrell retorted, "Or what?" as he proceeded to walk to the vehicle. When Mr. Terrell reached the front of the vehicle, he began to talk to somebody else on his phone and initially turned his back to the vehicle before finally facing the vehicle and beginning to surrender. Allgrunn pushed Mr. Terrell forward so that his body rested on the hood of the vehicle, with his hands outstretched in front of him. Allgrunn frisked Mr. Terrell as Mr. Terrell spoke to someone off-camera. Mr. Terrell proclaimed, "I ain't done nothing wrong," then pulled away from Allgrunn in an attempt to evade his control while Allgrunn told Mr. Terrell to put his hands behind his back. Allgrunn looped his left arm around Mr. Terrell's shoulder and torso, taking him to the ground.

At this point, Mrs. Terrell approached, stood about a yard or two from the men, and began to film the interaction on her cell phone. As the men audibly tussled, Allgrunn—who appeared to be squatting over Mr. Terrell—told Mr. Terrell to put his hands behind his back and asked Mrs. Terrell whether she was the individual who called 911. Mr. Terrell was speaking loudly throughout.[2] As the altercation continued, Allgrunn struck Mr. Terrell three times. As Allgrunn handcuffed Mr. Terrell, Mrs. Terrell hovered closely behind Allgrunn. He warned her to back up and told her that she had misused 911. Mrs. Terrell explained that she had called 911 because she wanted her husband transported to the hospital.

Allgrunn at least twice commanded Mr. Terrell to stand up and then—after he did not comply—to roll over on to his side. Mr. Terrell began to make louder unintelligible sounds. Allgrunn then punched Mr. Terrell a fourth time and shouted, "don't f****** bite me." As Allgrunn lifted Mr. Terrell to his knees, he told him, "now you're really under arrest" before

---

[2] Though what he is saying is hard to decipher from the video.

turning to inform Mrs. Terrell that she would also be arrested. Mrs. Terrell and Allgrunn argued about whether Mrs. Terrell had interfered with Mr. Terrell's arrest. Mrs. Terrell had hovered close to the two men throughout the arrest, mostly out of Allgrunn's line of sight. Allgrunn later explained to Mr. Terrell that he was "under arrest for resisting a police officer and battery on a police officer for biting me."

When emergency responders arrived, Allgrunn explained that Mr. Terrell was "bleeding from the mouth because when I took him in custody, he tried to bite my ankle and he got socked." Mrs. Terrell tried to interrupt from the background as Allgrunn recounted what had transpired. Allgrunn asked Mrs. Terrell to be quiet and move so that he could speak with the emergency responders. The responders began to evaluate Mr. Terrell as Mrs. Terrell stood a few steps away. By this point, Mr. Terrell's mouth and chin were bloodied. The responders continued to evaluate Mr. Terrell for eleven minutes, during which time Officers Michael Banta and Jeffery Henderson arrived.

During Mr. Terrell's evaluation, Allgrunn asked what Mrs. Terrell was recording, "that the medics are here?" Mrs. Terrell and Allgrunn then exchanged words about whether she was interfering. She said something about talking to her brother. Allgrunn questioned her videotaping efforts and called her "uncooperative." Then, after asking Mrs. Terrell repeatedly to move out of the way, Allgrunn told her to put down her belongings because she was under arrest. Mrs. Terrell stood in place, even as Allgrunn grasped her elbow to walk her toward his vehicle. Allgrunn then grabbed Mrs. Terrell and walked her to the back door of his vehicle and out of the video frame. Allgrunn instructed Mrs. Terrell to "get in the car," and the two sound as though they are struggling over Mrs. Terrell's phone. Mrs. Terrell screamed at Allgrunn, "Let go of my f****** head," and "I am not resisting I am trying to get in the f****** vehicle if you would let go." Still out of frame, Mrs.

No. 23-30723

Terrell seems to surrender her cell phone and get in the car. She was released by Allgrunn about eleven minutes later.

At the hospital, Mr. Terrell was hostile and uncooperative and admitted to having consumed half a gram of meth, at least 10 beers, 4 tramadol pills, and 10-15 Tylenols. His blood test confirmed high levels of alcohol and the presence of meth.

The Terrells brought a host of federal and state claims against Allgrunn, Banta, and Henderson. The defendants moved for summary judgment largely based on qualified immunity ("QI"). The district court denied summary judgment, and defendants appeal.

II.

"This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

Defendants assert QI from several of plaintiffs' claims.

> To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law. This is a demanding standard: Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, we do not deny its protection unless existing precedent places the constitutional question beyond debate. The court must ask whether the

5

> law so clearly and unambiguously prohibited the official's conduct that *every* reasonable official would understand that what he is doing violates the law.

*Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (cleaned up). "We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'" *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

This court has jurisdiction over interlocutory appeals from a denial of QI. "[A] district court's rejection of a defendant's qualified-immunity defense is a 'final decision' subject to immediate appeal under the general appellate jurisdiction statute, 28 U.S.C. § 1291." *Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

"[O]ur jurisdiction is generally limited to examining the *materiality* (*i.e.*, legal significance) of factual disputes the district court determined were genuine, not their genuineness (*i.e.*, existence). But an exception exists: we are permitted to review genuineness where, as here, video evidence is available." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citations omitted).

### III.

The district court denied Allgrunn summary judgment on the Terrells' false arrest claims. We reverse and render judgment for Allgrunn on both.

### A.

"The defense of probable cause negates a [42 U.S.C.] § 1983 claim based on an alleged false arrest." *Howell v. Tanner*, 650 F.2d 610, 614 (5th Cir. Unit B July 1981) (citations omitted). We view the existence of probable

No. 23-30723

cause according to the totality of the circumstances. *See District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018). "Probable cause is not a high bar" but "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 57 (citations and internal quotation marks omitted). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56–57 (citation and internal quotation marks omitted).

> The district court erroneously applied a subjective standard:
>
> Defendants cannot simply assert a list of violations for which, with the benefit of hindsight, a reasonable officer *could* have had probable cause to arrest Mr. Terrell; instead, they must instead demonstrate that Allgrunn believed that he *actually* had probable cause to take Mr. Terrell into protective custody based on the facts known to him at the time.[3]

But that is diametrically opposite our caselaw. "There must not even arguably be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer *could* have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (cleaned up and emphasis added). Moreover, the relevant inquiry is not into the officer's actual beliefs at the time. "Our cases make clear that an arresting officer's state of mind (except

---

[3] The error is repeated later in the district court's analysis:

> In this case, Plaintiffs have provided sufficient summary judgment evidence to call into question whether Allgrunn *actually* believed that Mr. Terrell was disturbing the peace, that Mrs. Terrell was obstructing his investigation, or that Mrs. Terrell was impeding the responders' medical evaluation.

7

for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted).

B.

Defendants point to six offenses for which Allgrunn had probable cause to arrest Mr. Terrell and additionally suggest probable cause existed to take Mr. Terrrell into protective custody. We only need to address La. R.S. 14:103(A)(3) because there is no genuine dispute of material fact as to whether Allgrunn had arguable probable cause to arrest Mr. Terrell for (1) "[a]ppearing in an intoxicated condition" (2) "in such a manner as would foreseeably disturb or alarm the public." The district court did not find a genuine dispute of material fact as to the first element. But, as to the second element, the court found "too many factual disputes that remain answered," including

1. "whether the neighbors were disturbed or felt threatened by Mr. Terrell's behavior and had reported these concerns to Allgrunn or the 911 dispatcher prior to the arrest";
2. "what specific actions Mr. Terrell exhibited that led Allgrunn to believe he posed a threat to his neighbors"; and
3. "whether the combination of drugs and alcohol that Mr. Terrell consumed resulted in unlawful behavior."

All three of these are immaterial as to whether Allgrunn had arguable probable cause to arrest Mr. Terrell, under La. R.S. 14:103(A)(3), because

1. The statute only requires that Mr. Terrell's behavior "foreseeably disturb . . . the public." The public's actual reaction is of no import. Nor is there any reason to believe that Mrs. Terrell, who quite evidently was disturbed enough to call the police, does not count as "the public" for these circumstances.
2. The statute does not require any actions to "pose[] a threat to his neighbors."
3. The statute does not require a causal relationship between drugs and alcohol and the unlawful behavior. Moreover, appending "unlawful

behavior" here is both circular and asking a legal, not factual, question.

Aside from the district court's faulty analysis, Allgrunn quite clearly had arguable probable cause to arrest Mr. Terrell. There is no dispute that Allgrunn was aware Mrs. Terrell had reported that Mr. Terrell was running up and down residential streets having taken drugs and alcohol. That call, especially in the context of Terrell's noticeable intoxication, is enough to clear the low bar of arguable probable cause. Nor are those the only facts supporting probable cause. The Louisiana courts have affirmed a conviction under La. R.S. 14:103(A)(3) for much less. *See State v. Trepagnier*, 07-749, (La. App. 5th Cir. 3/11/08), 982 So. 2d 185. Since Allgrunn had probable cause, he is entitled to QI from Mr. Terrell's false arrest claim.

C.

Defendants contended, in the district court and here, that Allgrunn had probable cause to arrest Mrs. Terrell for multiple offenses. We address two here.

1.

First, Allgrunn had arguable probable cause to arrest Mrs. Terrell for simple obstruction of a highway under La. R.S. 14:97.[4]

Plaintiffs fail to identify a single genuine dispute of material fact that remains with respect to La. R.S. 14:97. Indeed, they concede that Mrs. Terrell "walked into the middle of the street for about a minute to record Officer

---

[4] Plaintiffs argue that this is waived for inadequate briefing. It is not. In the district court, defendants walked through the relevant facts and quoted the relevant portion of La. R.S. 14:97. They expand that explanation on appeal. Given the simplicity of the Louisiana statute, detail with which defendants explain the underlying facts, and apparent absence of any caselaw complicating the legal analysis, defendants have provided enough to avoid waiver.

Allgrunn." Whether that constitutes arguable probable cause to arrest under La. R.S. 14:97 is a purely legal question.

We bypass the first prong of the QI inquiry and ask whether the law was so clearly established that "*every* reasonable official would understand that what he is doing violates the law." *Vincent*, 805 F.3d at 547 (cleaned up). Where, as here, the complained-of arrest is pursuant to state law that "might be reasonably read as not condemning the conduct of a reasonable officer in [the officer's] position," such that it would not "give[] the officer fair warning that, if he elected to arrest [the plaintiff], he would be doing so without probable cause," then the officer's actions would be "reasonable—even if mistaken" and the plaintiff would have failed to "satisfy her clearly-established-law burden." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1149 (10th Cir. 2016) (cleaned up).[5]

Mrs. Terrell fails to demonstrate that Allgrunn did not even arguably have probable cause to arrest her under La. R.S. 14:97. She asserts that since she "could easily have moved had a car approached . . . no obstruction occurred," but she provides no legal support for that interpretation of the statute. Section 14:97 covers "intentional . . . performance of any act on any . . . road . . . which will render movement thereon more difficult." Mrs. Terrell's walking into and remaining in the middle of the road unambiguously rendered movement on the road more difficult, even if no cars attempted to circumnavigate her. At the very least, the law does not appear to be clearly established to the contrary.

---

[5] *See Club Retro LLC v. Hilton*, 568 F.3d 181, 207 n.24 (5th Cir. 2009) (suggesting that both legal and factual indeterminacies might supply officers with arguable probable cause within the context of the QI analysis).

## 2.

Second, even if Allgrunn did not have arguable probable cause to arrest Mrs. Terrell under La. R.S. 14:97, he had arguable probable cause under La. R.S. 14:329(A), which provides,

> Interfering with a law enforcement investigation is the intentional interference or obstruction of a law enforcement officer conducting investigative work at the scene of a crime or the scene of an accident by refusing to move or leave the immediate scene of the crime or the accident when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties.

After Allgrunn took Mr. Terrell down to the ground, Mrs. Terrell approached Allgrunn from behind, and he twice ordered her to "back up." She does, but encroaches about 30 seconds later and tells Mr. Terrell, "Baby, just put your hands behind your back." Allgrunn tells her, "You need to back up too because you're gonna be charged for misuse of 911." She does not meaningfully back away and asks, "How did I misuse 911?" She then walks around the pair to pick something off the floor and backs away again, this time out of the view of the camera. He tells her again, "You need to back off because you're going too." She says, "Okay." He repeats, "Back off, that way," points behind him, and repeats, "That way or you're going in cuffs." She moves behind him in the direction that he pointed. After the EMTs arrive and start checking out Mr. Terrell's injuries, Mrs. Terrell moves to the right side of the EMTs. Allgrunn tells her to, "Go back this way," multiple times, but she ignores him as she speaks on the phone, and he arrests her.

Based on the video footage, it seems Allgrunn had probable cause to arrest Mrs. Terrell for interfering with a law enforcement investigation. Either way, plaintiffs have failed to demonstrate that Allgrunn's actions here were in violation of clearly established law.

IV.

The district court denied Allgrunn QI from the excessive-force claims. We reverse and render judgment for Allgrunn as to Mrs. Terrell, but we dismiss the appeal as to Mr. Terrell.

A.

"To overcome [an officer's] claim of qualified immunity on [a] claim of excessive force, [a plaintiff] must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (citation and internal quotation marks omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). Our review "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). "[O]ur focus is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

B.

The district court found (1) that "[d]efendants failed to present any evidence that would indicate that Mr. Terrell was dangerous and posed an immediate threat to Allgrunn, Mrs. Terrell, or any of the off-camera neighbors" and (2) that there was a genuine factual dispute as to whether "Mr. Terrell was actively resisting arrest while on the ground." After watching the video and listening to the 911 call, we agree that there is a genuine dispute of

material fact but only as to the period during which Mr. Terrell is on the ground and out of the field of vision of the camera.[6]

Mr. Terrell provides three cases that, he says, clearly establish the law. But they are all readily distinguishable from most of the aspects of Mr. Terrell's situation. *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 402 (5th Cir. 2021), involved the death of the suspect. *Sam v. Richard*, 887 F.3d 710, 712 (5th Cir. 2018), involved an apparently sober minor who the police officer admitted was not resisting. And *Alexander v. City of Round Rock*, 854 F.3d 298, 302 (5th Cir. 2017), also involved an apparently sober suspect who "did not physically resist the officers in any way."

On the other hand, defendants mainly rely on *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016). The court was clear that a "'takedown' maneuver—against a drunken, erratic suspect who is resisting arrest" was not constitutionally unreasonable in light of clearly established law. *Id.* at 314 (citation omitted). Moreover, given that the suspect was on the ground and the officer was trying to handcuff him, the officer's continued punching did not violate clearly established law. *Id.* at 315. Finally, a retaliatory punch in the face in response to a kick from the handcuffed suspect "was not objectively unreasonable." *Id.* at 316.[7]

---

[6] Of course, "an assessment of whether a suspect's physical actions amount to threatening behavior bearing on an excessive-force claim is a question of law." *Argueta*, 86 F.4th at 1090.

[7] Though the first two findings in *Griggs* were on the second prong of the QI analysis, it seems that the final finding was on the first. *See id.* Even though much of *Griggs* resolves that case based on QI's second prong rather than assessing whether there was an actual constitutional violation, *Griggs* retains its probative value here. When *Griggs* was written, clearly established law did not prohibit conduct very similar to what happened here. Plaintiffs have failed to demonstrate that any clearly established law condemning this sort of conduct has come about since.

No. 23-30723

*Griggs* indicates that clearly established law in 2016 did not infringe on the wide berth given to officers when dealing with unruly, intoxicated suspects. Plaintiffs have failed to demonstrate the law has changed. Even so, the ability of police officers to wield force in these situations is not unlimited. The genuine disputes of fact about what Mr. Terrell did while he was on the ground that materially bear on whether the force used in this situation was reasonable in light of clearly established law.

Since the video provides insufficient grounds for us effectively to review the district court's genuineness determination for the time when Mr. Terrell is out of sight, this part of this case does not fall within the exception articulated in *Argueta*. *See* 86 F.4th at 1088. Thus, because we are without jurisdiction to review a finding of a genuine dispute, we dismiss the appeal only for the denial of summary judgment to Allgrunn insofar as any excessive force may or may not have occurred while Mr. Terrell is out of the video's frame.

C.

Mrs. Terrell's excessive force claim is easily resolved on the second prong of the QI analysis. In short, plaintiffs can identify no case remotely resembling Mrs. Terrell's claim. The only case that even mentions psychological injury was raised by the district court. *See Flores v. Palacios*, 381 F.3d 391, 397 (5th Cir. 2004). But an abstract statement that psychological injury is not *per se* to be excluded from Fourth Amendment claims is not enough. Plaintiffs do no work to show any case established a right to be free from this sort of psychological injury (even generally defined) based on this sort of conduct (even generally defined).[8] Therefore, we reverse and render judg-

---

[8] *Cf. Cantrell v. City of Murphy*, 666 F.3d 911, 919–20 (5th Cir. 2012) (noting that the clearly-established inquiry required the law to be particularized); *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (per curiam) (tying the reasonableness of actions to "the

ment for Allgrunn on Mrs. Terrell's excessive force claim.

V.

The district court denied Allgrunn summary judgment on the Terrells' malicious prosecution claims.[9] We reverse and render judgment in favor of Allgrunn.

> Fifth Circuit case law between 2003 . . . and 2021 . . . explicitly denied the possibility of a constitutional malicious prosecution claim. When evaluating whether [Allgrunn] violated clearly established law for purposes of our qualified immunity analysis, we consider whether the law was clearly established at the time of the defendant's alleged misconduct.

*Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (cleaned up). Since the events here occurred in 2019, the law putatively supporting the Terrells' claims was not clearly established at the time.

Plaintiffs maintain that *Bledsoe v. Willis*, No. 23-30238, 2023 U.S. App. LEXIS 31326, at *15–16, 2023 WL 8184814 (5th Cir. Nov. 27, 2023) (per curiam) (unpublished), distinguishes *Guerra*. And indeed, it purports to. But *Bledsoe*'s attempt to convince us that *Guerra* does not say what it unambiguously does say is unconvincing. *Bledsoe* is unpublished and therefore not binding precedent. We decline to follow it, and, instead, we reverse and render judgment for Allgrunn.

VI.

The district court denied Allgrunn summary judgment on the Terrells' First Amendment retaliation claims. We reverse and render judgment

---

same facts" as the case at hand (citation omitted)).

[9] Though the complaint and briefing suggest that this might be just Mr. Terrell's claim, we characterize it, as per the district court, as both plaintiffs' claim.

for Allgrunn. "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019). Since there is probable cause for the arrests here, *see supra*, the Terrells' First Amendment retaliation claims are defeated.

VII.

The district court denied summary judgment to Officers Henderson and Banta on the Terrells' failure-to-intervene claims. We reverse and render judgment for the officers.

A.

Plaintiffs assert that the officers waived their QI defense to this claim. It is true that the words "qualified immunity" do not appear in the portion of the officers' motion, in the short section tailored specifically to failure to intervene. Even so, it is evident that the officers were asserting QI as to this claim. In multiple places the officers asserted QI as to all the claims in this case, with varying degrees of explicitness. *See, e.g.*, ROA. 396 ("Probable cause and qualified immunity bar all of plaintiffs' claims under both federal and state law."). The officers devoted a freestanding section of their memorandum to QI, which—though it focused on false arrest—in passing seems to assert QI against claims from "multiple [c]onstitutional provisions, including the First, Fourth, and Fourteenth Amendments." And the officers contended that there was no unconstitutional failure to intervene, which is part of the QI analysis.

Moreover, it is quite possible that the strictures of waiver are relaxed in the context of invoking QI because "[o]nce the defense . . . has been raised, the plaintiff has the burden of demonstrating that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (cleaned up). But we need not explore the bare minimum required to

invoke QI properly in this case. The officers' relevant pleadings in the district court do not waive the QI defense as to failure to intervene.[10]

### B.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation marks and citations omitted). "Clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures . . . have already been followed." *White v. Pauly*, 580 U.S. 73, 80 (2017) (per curiam). Moreover, officers need not "accept a suspect's innocent explanation at face value." *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018).

Considering these principles and our holdings above, this issue is easy to resolve. All the specific instances, listed by plaintiffs as points at which Henderson and Banta failed to intervene, were not violations of clearly established constitutional law. That ends the inquiry.

### VIII.

In this posture, we may exercise our pendent jurisdiction over the Louisiana state law claims. *See Morin v. Caire*, 77 F.3d 116, 119–20 (5th Cir. 1996). Judicial economy is a central consideration in deciding whether to do that. *See id.*

---

[10] The plaintiffs make an analogous waiver contention in favor of their First Amendment retaliation claims. That is even less convincing because the officers do explicitly invoke QI in the First Amendment retaliation section of their district court memorandum.

No. 23-30723

Because QI under Louisiana law closely relates to QI under federal law,[11] the state law claims are under-briefed before our court, and the district court erred on most of the federal claims, we vacate the order denying summary judgment on the state law claims so that the district court might consider them again in light of this opinion.

\* \* \* \* \*

We REVERSE and RENDER judgment for the defendants on all federal claims except for Mr. Terrell's excessive force claim. We DISMISS, for want of jurisdiction, the appeal insofar as it pertains to the denial of summary judgment on Mr. Terrell's excessive force claim to the extent that the conduct in question occurred when Mr. Terrell was out of the video frame. We VACATE the denial of summary judgment on the Louisiana state law claims and REMAND for reconsideration in light of this opinion.

---

[11] *See, e.g.*, *Moresi v. Dept. of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).