Case No. 23-30723

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Curtis Terrell; Angela Terrell,
*Plaintiffs-Appellees*,

v.

Jason Allgrunn; Michael Banta; Jeffery Henderson, Jr.
*Defendants-Appellant*s

On Appeal from the U.S. District Court for the Western District of Louisiana, Civil Action No. 5:20-cv-00999

## APPELLANTS' PETITION FOR PANEL REHEARING

James R. Sterritt, #18447
James Ashby Davis, #37653
COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation
P. O. Box 22260
Shreveport, LA  71120-2260
Telephone: (318) 221-6277
Telecopier: (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyancey.com
*Attorneys for Defendants-Appellants Jason Allgrunn, Michael Banta, and Jeffery Henderson, Jr.*

Dated: September 10, 2024

# **TABLE OF CONTENTS**

Table of Contents ....................................................................................i

Table of Authorities ............................................................................. ii

Introduction ..........................................................................................1

Argument and Authority .......................................................................3

    A.    Point of Law – The *Scott* exception is not limited to video evidence only ...................................................................................3

    B.    Points of Fact – Curtis' words while on the ground; Angela's words while Curtis is on the ground; Curtis' words calling for "backup;" and Curtis' undisputed bite .........................................7

    C.    Under the *Scott* exception and the complete facts, Allgrunn is entitled to qualified immunity on Curtis' Fourth Amendment excessive force claim ...............................................................13

        i.  Allgrunn's strikes with limited wind-up to accomplish handcuffing .........................................................13

       ii.  Allgrunn's single strike after Curtis' undisputed bite post-handcuffing ..........................................................15

Conclusion ..........................................................................................17

Certificate of Service ..........................................................................19

Certificate of Compliance ...................................................................20

i

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Argueta v. Jaradi*, 86 F4th 1084 (5th Cir. 2023) ......................................................4

*Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022) ......................................................11

*Garcia v. Orta*, 47 F.4th 343 (5th Cir. 2022) ............................................. 4-6, 12, 14

*Graham v. Connor,* 490 U.S. 386 (1989) ................................................16

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016) ........................................ 13, 15, 17

*Marksmeier v. Davie*, 622 F.3d 896 (8th Cir. 2010) ......................................6

*Morgan v. Borough of Fanwood*, 650 Fed. Appx. 76 (3rd Cir. 2017) .....................6

*Pierson v. Bassett*, 534 Fed. Appx. 768 (10th Cir. 2013) ........................................6

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ................................................3

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) .....................................15

*Rambert v. City of Greenville*, 107 F.4th 388 (4th Cir. 2024) .................................6

*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019) .........................................................5, 6

*Rich for Dupuis-Mays v. Palko,* 2018 WL 1306656 (E.D. Tex. 2018) ....................5

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................. *passim*

*Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021) ........................ 11, 15-16

## **INTRODUCTION**

In the Court's thorough Opinion, the Court held that the district court erred in denying qualified immunity to Deputy Jason Allgrunn ("Allgrunn"), Deputy Jeffery Henderson, Jr., and Sergeant Michael Banta (collectively, "Appellants") on the vast majority of Appellees Curtis and Angela Terrell's claims. This decision included a dismissal of Curtis' Fourth Amendment excessive force claim against Allgrunn based on the period until just after Allgrunn took him to the ground and Curtis disappeared from the view of Allgrunn's dashboard camera. [Opinion at p. 12-14, 18].

However, as to the portion of the incident in which both Allgrunn and Angela are shown on video but Curtis is obscured by the hood of Allgrunn's vehicle, the Court held that it lacked jurisdiction to address the excessive force claim. [*See id.*]. In other words, the Court dismissed the Fourth Amendment excessive force claim as to all of Allgrunn's actions up to and including the takedown of Curtis, but dismissed the appeal for lack of jurisdiction as to the portion of the excessive force claim based on what happened once Curtis was on the ground and his body was obscured by the hood of Allgrunn's vehicle. [*See id.*].

Appellants respectfully submit that with respect to this one issue of the excessive force claim, the Court "overlooked or misapprehended" certain "point[s]

1

of law and fact" such that it reached the wrong conclusion as to this claim. FRAP 40(a)(2). Specifically, the Court "overlooked or misapprehended" the following:

- The *Scott v. Harris*, 550 U.S. 372, 380-381 (2007), exception to the general rule that the court must accept a non-movant's version of events at the summary judgment stage is not limited to video evidence only. Other types of evidence – such as audio evidence consisting of Appellees' own contemporaneously recorded statements plus partial video – can also meet the *Scott* exception, so long as that evidence "blatantly contradicts" the nonmovant's version of events such that "no reasonable jury could believe it." *Id.* at 380.

- The Court's determination that "what [Curtis] is saying [while he was on the ground in front of Allgrunn's vehicle] is hard to decipher from the video" is incorrect. [Opinion at p. 3, n.2]. As captured by the contemporaneous audio recording included as part of Allgrunn's dash camera video, while on the ground, Curtis clearly expresses his then-existing resistance plus his intent to continue his resistance by stating, "I'll put my hands behind my back when you be nice, alright! Be nice!" If necessary, slowing the speed of the recording using a commonly available video player can assist in confirming that Curtis said this while on the ground.

- The Court's analysis does not account for the fact that Angela states "Baby, just put your hands behind your back!" when Curtis is on the ground – another clear indication that Curtis was resisting by disobeying the commands to put his hands behind his back.

- The Court's analysis does not account for Curtis' call for potential "backup" from a neighbor named "Dick," who Curtis wanted to "come outside."

- The Court's analysis does not account for the undisputed fact that Curtis bit Allgrunn while on the ground. Curtis admitted that he bit Allgrunn during the incident in paragraph 27 of his First Amended Complaint. ROA.182.

When these additional undisputed facts are considered, it is clear that Allgrunn's use of (1) several strikes to try to gain compliance and (2) a single strike to end violent resistance after Curtis' bite were reasonable and did not violate clearly established law. Below, Appellants address each of these issues.

## <u>ARGUMENT AND AUTHORITY</u>

### A. Point of Law - The *Scott* exception is not limited to video evidence only.

Under the general rules of summary judgment, the Court must view the facts in the summary judgment record in the light most favorable to the nonmoving party. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Further, the general rule in an interlocutory appeal based on qualified immunity is that the Court has jurisdiction

3

to review the materiality of factual disputes found by the district court, but not their genuineness. *See Garcia v. Orta*, 47 F.4th 343, 348-351 (5th Cir. 2022).

As the Court correctly stated on page 6 of its Opinion, "an exception exists" to these general rules regarding summary judgment and the interlocutory jurisdiction of this Court in a qualified immunity appeal. Under *Scott*, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380. In that circumstance, in an interlocutory appeal based on qualified immunity, the Court has jurisdiction to address both the materiality and genuineness of a district court's findings of purported disputes of fact. *See id.* at 376-386.

In the Court's Opinion, the Court stated that the *Scott* exception applies where, "as here, video evidence is available." [Opinion at p. 6]. *Scott* did involve video evidence. The *Scott* exception certainly does apply when video evidence is available, as it is in this case. *See Argueta v. Jaradi*, 86 F.4th 1084, 1089 (5th Cir. 2023).

But respectfully, the Court interpreted the *Scott* exception too narrowly. The relevant holding in *Scott* is not limited to video evidence only. Instead, the holding is that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380; *Garcia*, 47 F.4th at 350 n.2.

This Court has recognized that the *Scott* exception applies to any type of summary judgment evidence capable of "blatantly contradict[ing]" the nonmovant's evidence such that "no reasonable jury could believe it" - not just video evidence. 550 U.S. at 380. The Court has recognized that "Among [the Fifth Circuit's] precedents are some that rely on what can be heard, and not just what can be seen, on a video." *Garcia*, 47 F.4th at 350-351, *citing Rich v. Palko*, 920 F.3d 288, 295 (5th Cir. 2019).

In *Rich*, officers detained the plaintiff under a Texas statute permitting a warrantless detention of a mentally ill person when that person poses a danger to himself or others. 920 F.3d at 294-295. The district court denied the officers' motion for summary judgment based on qualified immunity, finding "a genuine issue of material fact as to whether the [the plaintiff] was unlawfully detained" based on "the audio and video evidence" and documentation from the investigation, as well as a genuine issue of material fact as to whether force used on the plaintiff was objectively reasonable. *Rich for Dupuis-Mays v. Palko*, 2018 WL 1309873 at *6 and *8 (E.D. Tex. 2018), *adopted by* 2018 WL 1306656 (E.D. Tex. 2018).

On appeal, this Court reversed and rendered judgment granting the officers qualified immunity on all claims on a record that consisted largely of an "audio recording of [a] 911 call," hospital surveillance video, and one of the officers' "audio feed while at [the plaintiff's group home and a hospital]." *Rich*, 920 F.3d at 291 n.1; *see also Garcia*, 47 F.4th at 350-353 (finding that the combination of video showing that the plaintiff's vehicle lurched forward at least six inches and audio evidence consisting of officers' contemporaneously recorded commands to the plaintiff to turn his vehicle off meant that no reasonable juror could find that the plaintiff had not been operating the motor vehicle, and stating "There is only so much we can place within the range of decisions by reasonable jurors").

Other circuits have similarly held that the *Scott* exception is not limited to video evidence alone, and that it also applies when audio recordings "blatantly contradict" the nonmovant's version of events such that "no reasonable jury could believe it." 550 U.S. at 380. *See, e.g.*, *Marksmeier v. Davie*, 622 F.3d 896, 900-901 (8th Cir. 2010); *Rambert v. City of Greenville*, 107 F.4th 388, 398-400 (4th Cir. 2024); *Morgan v. Borough of Fanwood*, 650 Fed. Appx. 76, 82-84 (3rd Cir. 2017); *Pierson v. Bassett*, 534 Fed. Appx. 768, 771 (10th Cir. 2013).

Under these cases, the *Scott* exception applies whether the evidence at issue is video, audio, or some other type of evidence, so long as that evidence "blatantly

6

contradicts" the nonmovant's version of events such that "no reasonable jury could believe it." 550 U.S. at 380. As explained in Sections B and C below, here, the video and audio evidence "blatantly contradicts" Curtis' assertion that he was compliant with Allgrunn's commands to put his hands behind his back while Curtis was on the ground, such that "no reasonable jury could believe it." *Id.* Further, the video and audio evidence – plus Curtis' own admission in his First Amended Complaint – clearly show that Curtis bit Allgrunn. As such, the Court does have jurisdiction to address Curtis' Fourth Amendment excessive force claim based on events that occurred while Curtis was on the ground, and the district court's denial of qualified immunity on this claim should be reversed.

**B. Points of Fact – Curtis' words while on the ground; Angela's words while Curtis is on the ground; Curtis' words calling for "backup;" and Curtis' undisputed bite**

The Court's recitation of the facts of this incident and the application of the law to the facts is generally correct. However, respectfully, the Court's recitation of the facts leaves out certain facts shown by the undisputed video and audio evidence that, when considered, entitle Allgrunn to qualified immunity on Curtis' Fourth Amendment excessive force claim in its entirety.

***"I'll put my hands behind my back when you be nice":*** The Court correctly found that after Allgrunn took Curtis to the ground, the two men "audibly tussled." [Opinion at p. 3]. The Court then stated that what Curtis said while on the ground "is hard to decipher from the video." [Opinion at p. 3, n.2].

Appellants respectfully submit that on the video and accompanying audio from Allgrunn's dashboard camera, Curtis can clearly be heard stating "I'll put my hands behind my back when you be nice, alright! Be nice!" DEF 176 at 0:02:38-0:02:42. Curtis made this statement very shortly after Allgrunn took Curtis to the ground and immediately following Allgrunn's command to Curtis to put his hands behind his back. *See id.*

While this statement can be heard without the assistance of a "slow motion" feature, use of "slow motion" slowing down the speed at which the video and audio recording is played can assist in clarifying that this is what Curtis said. While there are other options for video players capable of doing this, one free and easily accessible option is VLC Media Player, which is a free and open source cross-platform multimedia player and framework that plays most multimedia files. *See* https://www.videolan.org/vlc/.

When the video and audio is slowed down, it becomes even clearer that while Curtis was on the ground, he stated, "I'll put my hands behind my back when you

be nice, alright! Be nice!" DEF 176 at 0:02:38-0:02:42. This was an unmistakable expression of his then-existing active resistance to arrest and his intent to continue to actively resist arrest by keeping his hands away from Allgrunn despite Allgrunn's commands to the contrary. No reasonable jury could interpret this statement otherwise. *See Scott*, 550 U.S. at 380. In light of this contemporaneously recorded statement by Curtis while he was on the ground, plus the other video and audio evidence from Allgrunn's dashboard camera video, no reasonable jury could believe Curtis' testimony that he was compliant with Allgrunn's commands while he was on the ground. *See Scott*, 550 U.S. at 380.

***"Baby, just put your hands behind your back":*** The Court notes that shortly after Allgrunn took Curtis to the ground, Angela "approached" and "stood about a yard or two from the men." [Opinion at p. 3]. But respectfully, the Court's account leaves out what Angela said while she was standing a "yard or two" away from Curtis and Allgrunn as they "audibly tussled" on the ground. [Opinion at p. 3]. During this time, about twenty seconds or so after Curtis told Allgrunn that he would put his hands behind his back, Angela states "Baby, just put your hands behind your back". DEF 176 at 0:03:03-0:03:08.

This statement is a clear indication from Curtis' own wife and co-plaintiff that at that point in the incident (*i.e.*, about twenty seconds after Curtis had stated that he

would put his hands behind his back whenever Allgrunn met Curtis' subjective standard for being "nice"), Curtis was still resisting by refusing to put his hands behind his back. No reasonable jury could interpret this sequence of events in any other way – especially when the video clearly shows Allgrunn physically struggling with Curtis, "audibly tussl[ing]" with Curtis, and stating "that's all you gotta do [*i.e.*, put his hands behind his back]" to Curtis immediately after Angela makes this statement. DEF 176 at 0:03:03-0:03:08; Opinion at p. 3.

In other words, why would Angela tell Curtis, "Baby just put your hands behind your back" when she was standing "a yard or two" away unless at the time she made this statement, Curtis was still keeping his hands away from Allgrunn and was not putting his hands behind his back? [Opinion at p. 3]. Simply put, the video and audio evidence cannot reasonably be interpreted in any other way. *See Scott*, 550 U.S. at 380.

**"Tell Dick to come outside":** The Court states that just before Curtis "pulled away from Allgrunn in an attempt to evade his control," Curtis "spoke to someone off-camera." [Opinion at p. 3]. Respectfully, this description leaves out what Curtis' actual words were to that person off-camera. Curtis' words to this off-camera person were, "Shirley, you seen that right? Tell Dick to come outside, he knows the law too. I ain't done nothing wrong." In other words, Curtis called for a male individual

named "Dick," who was not known to Allgrunn, to come outside and assist Curtis in some way. DEF 176 at 0:02:15-0:02:27.

Allgrunn could have reasonably perceived this call for the assistance of an unknown male as posing a potential threat to Allgrunn, and as heightening the need to quickly gain control of Curtis before another potentially hostile male came out to help Curtis. *See Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021). This is particularly true since Allgrunn was the only officer on the scene at the time. *See Betts v. Brennan*, 22 F.4th 577, 582-584 (5th Cir. 2022).

***Curtis' undisputed bite while on the ground:*** The Court states that after Allgrunn was finally able to handcuff Terrell, Allgrunn commanded Curtis to stand up and then, after Curtis did not comply, to roll over onto his side. [Opinion at p. 3]. Then, Curtis "began to make louder, unintelligible sounds," and "Allgrunn then punched Mr. Terrell a fourth time and shouted 'don't f****** bite me'." [*Id.*].

Respectfully, this leaves out the most important fact during this portion of the incident – the fact that Curtis did, in fact, bite Allgrunn. Allgrunn did not simply say "don't f****** bite me" for no reason. Allgrunn said this because Curtis had just bitten Allgrunn. Allgrunn then delivered a single strike to Curtis to end Curtis' violent active resistance. DEF 176 at 0:03:25-0:03:30.

The fact that Curtis bit Allgrunn while Curtis and Allgrunn were on the ground is undisputed. First, as Appellants pointed out on page 20 of 71 of their Original Appellant Brief, Curtis admitted in paragraph 27 of his Amended Complaint that he bit Allgrunn while they were both on the ground. ROA.182. Second, Appellees admit on pages 30 and 39 of their Appellee Brief that Curtis bit Allgrunn while they were on the ground.

Third, the video of the incident itself shows that Curtis bit Allgrunn – Allgrunn's reaction and contemporaneous statement telling Curtis not to bite him clearly shows that Curtis was biting Allgrunn at that time, and that Allgrunn's single punch was a direct response to the bite. DEF 176 at 0:03:25-0:03:30; *see Garcia*, 47 F.4th at 353. Fourth, Curtis admits later in the video and audio recording that he bit Allgrunn while they were on the ground. DEF 176 at 0:08:10-0:08:13. Fifth, both of Allgrunn's reports after the incident confirm that Curtis bit Allgrunn while they were on the ground. ROA.367, 383.

This evidence plus Curtis' own admissions is overwhelming and undisputed – Curtis clearly bit Allgrunn while they were both on the ground.  No reasonable jury could interpret the video and audio evidence, Curtis' own admissions, and Allgrunn's reports in any other way. *See Scott*, 550 U.S. 380.

12

**C. Under the *Scott* exception and the complete facts, Allgrunn is entitled to qualified immunity on Curtis' Fourth Amendment excessive force claim.**

Under the *Scott* exception and the complete facts, both of Allgrunn's uses of force on Curtis while they were on the ground (*i.e.*, first, several strikes with limited wind up while Curtis was keeping his hands away from Allgrunn, and second, one strike after Curtis' undisputed bite) were reasonable. Thus, at the first step of qualified immunity, these actions did not violate the Fourth Amendment, especially since the Fourth Amendment standard requires considering how a reasonable officer on the scene could have perceived what was occurring. *See Tucker*, 998 F.3d at 176; *Griggs v. Brewer*, 841 F.3d 308, 313-315 (5th Cir. 2016). Further, at the second step of qualified immunity, these actions also did not violate clearly established law. *Griggs*, 841 F.3d at 313-315. Each of these two uses of force is addressed in turn below at each of the two steps of the qualified immunity analysis.

**i.    Allgrunn's strikes with limited wind-up to accomplish handcuffing**

As the Court found in its Opinion, at the point at which Allgrunn took Curtis to the ground and Curtis disappeared from the view of the dashboard camera, Curtis was intoxicated and had just "pulled away from Allgrunn in an attempt to evade his control." [Opinion at p. 3]. On the ground, Allgrunn was already facing the actively resisting and intoxicated Curtis. At that point, Allgrunn could not have known what

Angela would do. He was also facing the potential for an unknown male, "Dick," to "come outside" and potentially assist Curtis in some way.

Once on the ground, Allgrunn ordered Curtis to put his hands behind his back. But Curtis stated, "I'll put my hands behind my back when you be nice" – a clear expression of Curtis' then-existing resistance and his intent to continue resisting despite Allgrunn's command to put his hands behind his back. DEF 176 at 0:02:27-0:02:50. Only after Curtis failed to put his hands behind his back and made this statement clearly indicating that he was resisting and would continue to resist did Allgrunn deliver any strikes to Curtis to attempt to gain compliance. DEF 176 at 0:02:53-0:02:56.

But even this did not work to gain compliance from Curtis. Approximately twenty seconds later, Angela pleaded with Curtis, "Baby, just put your hands behind your back". DEF 176 at 0:03:03-0:03:08. This clearly shows that Curtis had been resisting while on the ground and that he was continuing to resist while on the ground. Considering these contemporaneously recorded statements by Appellees themselves, plus what is shown on the video, no reasonable jury could possibly conclude that Curtis was not resisting while on the ground. *See Scott*, 550 U.S. at 380. "There is only so much [the Court] can place within the range of decisions by reasonable jurors." *Garcia*, 47 F.4th at 353.

Allgrunn's strikes to Curtis while he was on the ground, to which Allgrunn resorted only after Curtis refused commands to put his hands behind his back, were objectively reasonable. At the first step of qualified immunity, these strikes did not violate the Fourth Amendment. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) ("measured and ascending" force corresponding to the plaintiff's "escalating verbal and physical resistance" consisting of "refusing to turn around and be handcuffed" was "objectively reasonable"); *Tucker*, 998 F.3d at 183-184.

Further, under *Griggs*, it does not violate clearly established law to "use non-deadly punches to gain control of the arms of a drunken, actively resisting suspect." *Griggs*, 841 F.3d at 314; Opinion at p. 13. Both the district court and this Court have found that Curtis was intoxicated during the incident, including via consumption of alcohol and multiple other substances, so Curtis was "drunken." *Griggs*, 841 F.3d at 314. When (1) Curtis' own recorded statement of his then-existing resistance and his intent to continue resisting, (2) Angela's recorded plea to Curtis about twenty seconds later, and (3) the portions of the video and audio recording showing the "audible tussle" occurring on the ground are considered, Curtis was also an "actively resisting suspect." *Id.* Allgrunn's use of non-deadly punches with limited wind-up to attempt to gain compliance from Curtis did not violate clearly established law. *See id.*

15

### ii.    Allgrunn's single strike after Curtis' undisputed bite post-handcuffing

The summary judgment evidence plus Curtis' own admissions is overwhelming and undisputed – Curtis clearly bit Allgrunn while they were both on the ground, shortly after Curtis was handcuffed. ROA.182, 367, 383; DEF 176 at DEF 176 at 0:03:25-0:03:30 and 0:08:10-0:08:13. No reasonable jury could interpret the video and audio evidence, Curtis' own admissions, and Allgrunn's reports in any other way. *See Scott*, 550 U.S. 380.

Appellees have tried to make a distinction between Curtis biting Allgrunn's boot and Curtis biting Allgrunn himself. [Appellees' Brief at p. 30 of 63]. But there is no distinction – particularly under the Fourth Amendment standard, which "must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-397 (1989); *Tucker*, 998 F.3d at 176.

What if a criminal suspect fires a gun at an officer, but the bullet hits the officer's bulletproof vest, and the suspect later contends he was aiming for the bulletproof vest, not the officer? Does that mean that the suspect has not actually

shot the officer, or that the suspect's act does not constitute violent resistance justifying the officer's use of force in response?

Of course not. An act of violent resistance to an officer is still an act of violent resistance even if it fails to injure the officer. The same is true of Curtis' undisputed bite – even if he was unsuccessful in his attempt to inflict injury upon Allgrunn and his teeth only made contact with Allgrunn's boot, this means that he bit Allgrunn, an act of violent resistance.

Under *Griggs*, it is objectively reasonable for an officer to "deliver a swift punch to [an arrestee's] face" when the arrestee has been handcuffed but is still actively resisting, particularly if that resistance constitutes a "physical assault" against the officer. *Id.* at 316; Opinion at p. 13, n.7. Since such conduct is objectively reasonable, it cannot violate clearly established Fourth Amendment law. *See Griggs*, 841 F.3d at 316.

## <u>CONCLUSION</u>

Appellants respectfully submit that the district court's ruling denying qualified immunity as to Curtis' Fourth Amendment excessive force claim should be reversed in its entirety at both steps of qualified immunity.

Respectfully submitted,

COOK, YANCEY, KING &
GALLOWAY
A Professional Law Corporation

By: */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-
APPELLANTS JASON ALLGRUNN,
JEFFERY HENDERSON, JR., AND
MICHAEL BANTA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 10th day of September, 2024, I caused the foregoing brief to be served on Plaintiffs-Appellees' counsel through the Court's CM/ECF system, and via email, pursuant to Fifth Circuit Rules 25.2 and 25.2.5.

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation

By: _/s/ James Ashby Davis_
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 40(b)(1) because the brief contains 3,887 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font, excluding footnotes, which are printed in 12 point Time New Roman font.

Dated:  September 10, 2024

By:  */s/ James Ashby Davis*
James R. Sterritt #18447
James Ashby Davis #37653
333 Texas Street, Suite 1700
P.O. Box 22260
Shreveport, LA  71120-2260
Phone:  (318) 221-6277
Fax:  (318) 227-7850
james.sterritt@cookyancey.com
ashby.davis@cookyacey.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS JASON ALLGRUNN, JEFFERY HENDERSON, JR., AND MICHAEL BANTA

# United States Court of Appeals for the Fifth Circuit

---

No. 23-30723

---

United States Court of Appeals
Fifth Circuit

**FILED**

August 27, 2024

Lyle W. Cayce
Clerk

CURTIS TERRELL; ANGELA TERRELL,

*Plaintiffs—Appellees,*

*versus*

JASON ALLGRUNN; MICHAEL BANTA; JEFFERY HENDERSON, JR.,

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:20-CV-999

---

Before SMITH, ENGELHARDT, and RAMIREZ, *Circuit Judges.*

JERRY E. SMITH, *Circuit Judge*:

After consuming 10 beers, 4 tramadol pills, 10–15 Tylenols, and half a gram of methamphetamine, Curtis Terrell began to run erratically up and down the streets of a residential neighborhood. Angela Terrell, Mr. Terrell's wife, was understandably concerned and called the police. When Officer Jason Allgrunn arrived, he arrested Mr. Terrell, and after Mrs. Terrell went into the middle of the street to film the incident, arrested her as well. The Terrells bring a host of federal and state claims against Allgrunn and other responding officers. The district court denied summary judgment to defendants on every claim. We reverse and render in major part and dismiss the

appeal and vacate and remand in minor part.

## I.

On August 11, 2019, Mrs. Terrell called 911 requesting an ambulance because Mr. Terrell had reportedly taken pain pills: "My husband just took some pills, I need you to come get him, please."[1] They had been fighting all day. Mr. Terrell was outside the house running up a residential street. When connected to the sheriff's office, Mrs. Terrell said, "I need an ambulance for my husband, I don't need the sheriff's office." She continued to convey her husband's location to the sheriff's office as he ran around outside and she tried to keep up with him. About a minute later, he was still running up and down the road. The sheriff's office seemed skeptical that pain pills were making him run up and down the street. Mrs. Terrell stated that Mr. Terrell had also been drinking that day. Allgrunn was informed of the nature of the situation as he was en route.

Allgrunn was the first officer to respond. Allgrunn's interaction with the Terrells was largely captured by his dashboard camera. When he arrived, the Terrells were standing on opposite sides of the road's edge, each on a cell phone. Allgrunn parked and exited his vehicle. He approached the pair and asked Mr. Terrell, "you alright?" to which Mr. Terrell responded, "yes, sir." As Mr. Terrell turned and walked away, Allgrunn twice commanded him to "come here," while Mr. Terrell accused Mrs. Terrell of "bullshitting." Mr. Terrell stopped and mumbled an unclear response.

After some back-and-forth discussion, Allgrunn instructed Mr. Terrell to "walk to the front of my vehicle" and warned him that "I am not going

---

[1] The district court provided a generally adequate outline of the relevant facts. What follows is a heavily edited and enriched version of the district court's recounting in light of our view of the record.

to tell you again." Mr. Terrell retorted, "Or what?" as he proceeded to walk to the vehicle. When Mr. Terrell reached the front of the vehicle, he began to talk to somebody else on his phone and initially turned his back to the vehicle before finally facing the vehicle and beginning to surrender. Allgrunn pushed Mr. Terrell forward so that his body rested on the hood of the vehicle, with his hands outstretched in front of him. Allgrunn frisked Mr. Terrell as Mr. Terrell spoke to someone off-camera. Mr. Terrell proclaimed, "I ain't done nothing wrong," then pulled away from Allgrunn in an attempt to evade his control while Allgrunn told Mr. Terrell to put his hands behind his back. Allgrunn looped his left arm around Mr. Terrell's shoulder and torso, taking him to the ground.

At this point, Mrs. Terrell approached, stood about a yard or two from the men, and began to film the interaction on her cell phone. As the men audibly tussled, Allgrunn—who appeared to be squatting over Mr. Terrell—told Mr. Terrell to put his hands behind his back and asked Mrs. Terrell whether she was the individual who called 911. Mr. Terrell was speaking loudly throughout.[2] As the altercation continued, Allgrunn struck Mr. Terrell three times. As Allgrunn handcuffed Mr. Terrell, Mrs. Terrell hovered closely behind Allgrunn. He warned her to back up and told her that she had misused 911. Mrs. Terrell explained that she had called 911 because she wanted her husband transported to the hospital.

Allgrunn at least twice commanded Mr. Terrell to stand up and then—after he did not comply—to roll over on to his side. Mr. Terrell began to make louder unintelligible sounds. Allgrunn then punched Mr. Terrell a fourth time and shouted, "don't f****** bite me." As Allgrunn lifted Mr. Terrell to his knees, he told him, "now you're really under arrest" before

---

[2] Though what he is saying is hard to decipher from the video.

turning to inform Mrs. Terrell that she would also be arrested. Mrs. Terrell and Allgrunn argued about whether Mrs. Terrell had interfered with Mr. Terrell's arrest. Mrs. Terrell had hovered close to the two men throughout the arrest, mostly out of Allgrunn's line of sight. Allgrunn later explained to Mr. Terrell that he was "under arrest for resisting a police officer and battery on a police officer for biting me."

When emergency responders arrived, Allgrunn explained that Mr. Terrell was "bleeding from the mouth because when I took him in custody, he tried to bite my ankle and he got socked." Mrs. Terrell tried to interrupt from the background as Allgrunn recounted what had transpired. Allgrunn asked Mrs. Terrell to be quiet and move so that he could speak with the emergency responders. The responders began to evaluate Mr. Terrell as Mrs. Terrell stood a few steps away. By this point, Mr. Terrell's mouth and chin were bloodied. The responders continued to evaluate Mr. Terrell for eleven minutes, during which time Officers Michael Banta and Jeffery Henderson arrived.

During Mr. Terrell's evaluation, Allgrunn asked what Mrs. Terrell was recording, "that the medics are here?" Mrs. Terrell and Allgrunn then exchanged words about whether she was interfering. She said something about talking to her brother. Allgrunn questioned her videotaping efforts and called her "uncooperative." Then, after asking Mrs. Terrell repeatedly to move out of the way, Allgrunn told her to put down her belongings because she was under arrest. Mrs. Terrell stood in place, even as Allgrunn grasped her elbow to walk her toward his vehicle. Allgrunn then grabbed Mrs. Terrell and walked her to the back door of his vehicle and out of the video frame. Allgrunn instructed Mrs. Terrell to "get in the car," and the two sound as though they are struggling over Mrs. Terrell's phone. Mrs. Terrell screamed at Allgrunn, "Let go of my f****** head," and "I am not resisting I am trying to get in the f****** vehicle if you would let go." Still out of frame, Mrs.

Terrell seems to surrender her cell phone and get in the car. She was released by Allgrunn about eleven minutes later.

At the hospital, Mr. Terrell was hostile and uncooperative and admitted to having consumed half a gram of meth, at least 10 beers, 4 tramadol pills, and 10-15 Tylenols. His blood test confirmed high levels of alcohol and the presence of meth.

The Terrells brought a host of federal and state claims against Allgrunn, Banta, and Henderson. The defendants moved for summary judgment largely based on qualified immunity ("QI"). The district court denied summary judgment, and defendants appeal.

## II.

"This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

Defendants assert QI from several of plaintiffs' claims.

To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law. This is a demanding standard: Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, we do not deny its protection unless existing precedent places the constitutional question beyond debate. The court must ask whether the

law so clearly and unambiguously prohibited the official's con-
duct that *every* reasonable official would understand that what
he is doing violates the law.

*Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (cleaned up).
"We do 'not require that an official demonstrate that he did not violate
clearly established federal rights; our precedent places that burden upon
plaintiffs.'" *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (quoting *Salas
v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

This court has jurisdiction over interlocutory appeals from a denial of
QI. "[A] district court's rejection of a defendant's qualified-immunity de-
fense is a 'final decision' subject to immediate appeal under the general
appellate jurisdiction statute, 28 U.S.C. § 1291." *Behrens v. Pelletier*, 516 U.S.
299, 301 (1996).

"[O]ur jurisdiction is generally limited to examining the *materiality*
(*i.e.*, legal significance) of factual disputes the district court determined were
genuine, not their genuineness (*i.e.*, existence). But an exception exists: we
are permitted to review genuineness where, as here, video evidence is avail-
able." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citations
omitted).

III.

The district court denied Allgrunn summary judgment on the Ter-
rells' false arrest claims. We reverse and render judgment for Allgrunn on
both.

A.

"The defense of probable cause negates a [42 U.S.C.] § 1983 claim
based on an alleged false arrest." *Howell v. Tanner*, 650 F.2d 610, 614 (5th
Cir. Unit B July 1981) (citations omitted). We view the existence of probable

No. 23-30723

cause according to the totality of the circumstances. *See District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018). "Probable cause is not a high bar" but "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 57 (citations and internal quotation marks omitted). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56–57 (citation and internal quotation marks omitted).

> The district court erroneously applied a subjective standard:
>
> Defendants cannot simply assert a list of violations for which, with the benefit of hindsight, a reasonable officer *could* have had probable cause to arrest Mr. Terrell; instead, they must instead demonstrate that Allgrunn believed that he *actually* had probable cause to take Mr. Terrell into protective custody based on the facts known to him at the time.[3]

But that is diametrically opposite our caselaw. "There must not even arguably be probable cause for the search and arrest for immunity to be lost. That is, if a reasonable officer *could* have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (cleaned up and emphasis added). Moreover, the relevant inquiry is not into the officer's actual beliefs at the time. "Our cases make clear that an arresting officer's state of mind (except

---

[3] The error is repeated later in the district court's analysis:

> In this case, Plaintiffs have provided sufficient summary judgment evidence to call into question whether Allgrunn *actually* believed that Mr. Terrell was disturbing the peace, that Mrs. Terrell was obstructing his investigation, or that Mrs. Terrell was impeding the responders' medical evaluation.

for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citations omitted).

## B.

Defendants point to six offenses for which Allgrunn had probable cause to arrest Mr. Terrell and additionally suggest probable cause existed to take Mr. Terrrell into protective custody. We only need to address La. R.S. 14:103(A)(3) because there is no genuine dispute of material fact as to whether Allgrunn had arguable probable cause to arrest Mr. Terrell for (1) "[a]ppearing in an intoxicated condition" (2) "in such a manner as would foreseeably disturb or alarm the public." The district court did not find a genuine dispute of material fact as to the first element. But, as to the second element, the court found "too many factual disputes that remain answered," including

1. "whether the neighbors were disturbed or felt threatened by Mr. Terrell's behavior and had reported these concerns to Allgrunn or the 911 dispatcher prior to the arrest";
2. "what specific actions Mr. Terrell exhibited that led Allgrunn to believe he posed a threat to his neighbors"; and
3. "whether the combination of drugs and alcohol that Mr. Terrell consumed resulted in unlawful behavior."

All three of these are immaterial as to whether Allgrunn had arguable probable cause to arrest Mr. Terrell, under La. R.S. 14:103(A)(3), because

1. The statute only requires that Mr. Terrell's behavior "foreseeably disturb . . . the public." The public's actual reaction is of no import. Nor is there any reason to believe that Mrs. Terrell, who quite evidently was disturbed enough to call the police, does not count as "the public" for these circumstances.
2. The statute does not require any actions to "pose[] a threat to his neighbors."
3. The statute does not require a causal relationship between drugs and alcohol and the unlawful behavior. Moreover, appending "unlawful

behavior" here is both circular and asking a legal, not factual, question.

Aside from the district court's faulty analysis, Allgrunn quite clearly had arguable probable cause to arrest Mr. Terrell. There is no dispute that Allgrunn was aware Mrs. Terrell had reported that Mr. Terrell was running up and down residential streets having taken drugs and alcohol. That call, especially in the context of Terrell's noticeable intoxication, is enough to clear the low bar of arguable probable cause. Nor are those the only facts supporting probable cause. The Louisiana courts have affirmed a conviction under La. R.S. 14:103(A)(3) for much less. *See State v. Trepagnier*, 07-749, (La. App. 5th Cir. 3/11/08), 982 So. 2d 185. Since Allgrunn had probable cause, he is entitled to QI from Mr. Terrell's false arrest claim.

## C.

Defendants contended, in the district court and here, that Allgrunn had probable cause to arrest Mrs. Terrell for multiple offenses. We address two here.

## 1.

First, Allgrunn had arguable probable cause to arrest Mrs. Terrell for simple obstruction of a highway under La. R.S. 14:97.[4]

Plaintiffs fail to identify a single genuine dispute of material fact that remains with respect to La. R.S. 14:97. Indeed, they concede that Mrs. Terrell "walked into the middle of the street for about a minute to record Officer

---

[4] Plaintiffs argue that this is waived for inadequate briefing. It is not. In the district court, defendants walked through the relevant facts and quoted the relevant portion of La. R.S. 14:97. They expand that explanation on appeal. Given the simplicity of the Louisiana statute, detail with which defendants explain the underlying facts, and apparent absence of any caselaw complicating the legal analysis, defendants have provided enough to avoid waiver.

Allgrunn." Whether that constitutes arguable probable cause to arrest under La. R.S. 14:97 is a purely legal question.

We bypass the first prong of the QI inquiry and ask whether the law was so clearly established that "*every* reasonable official would understand that what he is doing violates the law." *Vincent*, 805 F.3d at 547 (cleaned up). Where, as here, the complained-of arrest is pursuant to state law that "might be reasonably read as not condemning the conduct of a reasonable officer in [the officer's] position," such that it would not "give[] the officer fair warning that, if he elected to arrest [the plaintiff], he would be doing so without probable cause," then the officer's actions would be "reasonable—even if mistaken" and the plaintiff would have failed to "satisfy her clearly-established-law burden." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1149 (10th Cir. 2016) (cleaned up).[5]

Mrs. Terrell fails to demonstrate that Allgrunn did not even arguably have probable cause to arrest her under La. R.S. 14:97. She asserts that since she "could easily have moved had a car approached . . . no obstruction occurred," but she provides no legal support for that interpretation of the statute. Section 14:97 covers "intentional . . . performance of any act on any . . . road . . . which will render movement thereon more difficult." Mrs. Terrell's walking into and remaining in the middle of the road unambiguously rendered movement on the road more difficult, even if no cars attempted to circumnavigate her. At the very least, the law does not appear to be clearly established to the contrary.

---

[5] *See Club Retro LLC v. Hilton*, 568 F.3d 181, 207 n.24 (5th Cir. 2009) (suggesting that both legal and factual indeterminacies might supply officers with arguable probable cause within the context of the QI analysis).

2.

Second, even if Allgrunn did not have arguable probable cause to arrest Mrs. Terrell under La. R.S. 14:97, he had arguable probable cause under La. R.S. 14:329(A), which provides,

> Interfering with a law enforcement investigation is the intentional interference or obstruction of a law enforcement officer conducting investigative work at the scene of a crime or the scene of an accident by refusing to move or leave the immediate scene of the crime or the accident when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties.

After Allgrunn took Mr. Terrell down to the ground, Mrs. Terrell approached Allgrunn from behind, and he twice ordered her to "back up." She does, but encroaches about 30 seconds later and tells Mr. Terrell, "Baby, just put your hands behind your back." Allgrunn tells her, "You need to back up too because you're gonna be charged for misuse of 911." She does not meaningfully back away and asks, "How did I misuse 911?" She then walks around the pair to pick something off the floor and backs away again, this time out of the view of the camera. He tells her again, "You need to back off because you're going too." She says, "Okay." He repeats, "Back off, that way," points behind him, and repeats, "That way or you're going in cuffs." She moves behind him in the direction that he pointed. After the EMTs arrive and start checking out Mr. Terrell's injuries, Mrs. Terrell moves to the right side of the EMTs. Allgrunn tells her to, "Go back this way," multiple times, but she ignores him as she speaks on the phone, and he arrests her.

Based on the video footage, it seems Allgrunn had probable cause to arrest Mrs. Terrell for interfering with a law enforcement investigation. Either way, plaintiffs have failed to demonstrate that Allgrunn's actions here were in violation of clearly established law.

No. 23-30723

IV.

The district court denied Allgrunn QI from the excessive-force claims. We reverse and render judgment for Allgrunn as to Mrs. Terrell, but we dismiss the appeal as to Mr. Terrell.

A.

"To overcome [an officer's] claim of qualified immunity on [a] claim of excessive force, [a plaintiff] must show (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (citation and internal quotation marks omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). Our review "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). "[O]ur focus is on the officers' reasonable perception of the events at issue, as they happened, *without* the aid of hindsight, multiple viewing angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

B.

The district court found (1) that "[d]efendants failed to present any evidence that would indicate that Mr. Terrell was dangerous and posed an immediate threat to Allgrunn, Mrs. Terrell, or any of the off-camera neighbors" and (2) that there was a genuine factual dispute as to whether "Mr. Terrell was actively resisting arrest while on the ground." After watching the video and listening to the 911 call, we agree that there is a genuine dispute of

material fact but only as to the period during which Mr. Terrell is on the ground and out of the field of vision of the camera.[6]

Mr. Terrell provides three cases that, he says, clearly establish the law. But they are all readily distinguishable from most of the aspects of Mr. Terrell's situation. *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 402 (5th Cir. 2021), involved the death of the suspect. *Sam v. Richard*, 887 F.3d 710, 712 (5th Cir. 2018), involved an apparently sober minor who the police officer admitted was not resisting. And *Alexander v. City of Round Rock*, 854 F.3d 298, 302 (5th Cir. 2017), also involved an apparently sober suspect who "did not physically resist the officers in any way."

On the other hand, defendants mainly rely on *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016). The court was clear that a "'takedown' maneuver—against a drunken, erratic suspect who is resisting arrest" was not constitutionally unreasonable in light of clearly established law. *Id.* at 314 (citation omitted). Moreover, given that the suspect was on the ground and the officer was trying to handcuff him, the officer's continued punching did not violate clearly established law. *Id.* at 315. Finally, a retaliatory punch in the face in response to a kick from the handcuffed suspect "was not objectively unreasonable." *Id.* at 316.[7]

---

[6] Of course, "an assessment of whether a suspect's physical actions amount to threatening behavior bearing on an excessive-force claim is a question of law." *Argueta*, 86 F.4th at 1090.

[7] Though the first two findings in *Griggs* were on the second prong of the QI analysis, it seems that the final finding was on the first. *See id.* Even though much of *Griggs* resolves that case based on QI's second prong rather than assessing whether there was an actual constitutional violation, *Griggs* retains its probative value here. When *Griggs* was written, clearly established law did not prohibit conduct very similar to what happened here. Plaintiffs have failed to demonstrate that any clearly established law condemning this sort of conduct has come about since.

*Griggs* indicates that clearly established law in 2016 did not infringe on the wide berth given to officers when dealing with unruly, intoxicated suspects. Plaintiffs have failed to demonstrate the law has changed. Even so, the ability of police officers to wield force in these situations is not unlimited. The genuine disputes of fact about what Mr. Terrell did while he was on the ground that materially bear on whether the force used in this situation was reasonable in light of clearly established law.

Since the video provides insufficient grounds for us effectively to review the district court's genuineness determination for the time when Mr. Terrell is out of sight, this part of this case does not fall within the exception articulated in *Argueta*. *See* 86 F.4th at 1088. Thus, because we are without jurisdiction to review a finding of a genuine dispute, we dismiss the appeal only for the denial of summary judgment to Allgrunn insofar as any excessive force may or may not have occurred while Mr. Terrell is out of the video's frame.

## C.

Mrs. Terrell's excessive force claim is easily resolved on the second prong of the QI analysis. In short, plaintiffs can identify no case remotely resembling Mrs. Terrell's claim. The only case that even mentions psychological injury was raised by the district court. *See Flores v. Palacios*, 381 F.3d 391, 397 (5th Cir. 2004). But an abstract statement that psychological injury is not *per se* to be excluded from Fourth Amendment claims is not enough. Plaintiffs do no work to show any case established a right to be free from this sort of psychological injury (even generally defined) based on this sort of conduct (even generally defined).[8] Therefore, we reverse and render judg-

---

[8] *Cf. Cantrell v. City of Murphy*, 666 F.3d 911, 919–20 (5th Cir. 2012) (noting that the clearly-established inquiry required the law to be particularized); *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (per curiam) (tying the reasonableness of actions to "the

ment for Allgrunn on Mrs. Terrell's excessive force claim.

## V.

The district court denied Allgrunn summary judgment on the Terrells' malicious prosecution claims.[9]  We reverse and render judgment in favor of Allgrunn.

> Fifth Circuit case law between 2003 . . . and 2021 . . . explicitly denied the possibility of a constitutional malicious prosecution claim. When evaluating whether [Allgrunn] violated clearly established law for purposes of our qualified immunity analysis, we consider whether the law was clearly established at the time of the defendant's alleged misconduct.

*Guerra v. Castillo*, 82 F.4th 278, 289 (5th Cir. 2023) (cleaned up).  Since the events here occurred in 2019, the law putatively supporting the Terrells' claims was not clearly established at the time.

Plaintiffs maintain that *Bledsoe v. Willis*, No. 23-30238, 2023 U.S. App. LEXIS 31326, at *15–16, 2023 WL 8184814 (5th Cir. Nov. 27, 2023) (per curiam) (unpublished), distinguishes *Guerra*.  And indeed, it purports to.  But *Bledsoe*'s attempt to convince us that *Guerra* does not say what it unambiguously does say is unconvincing.  *Bledsoe* is unpublished and therefore not binding precedent.  We decline to follow it, and, instead, we reverse and render judgment for Allgrunn.

## VI.

The district court denied Allgrunn summary judgment on the Terrells' First Amendment retaliation claims.  We reverse and render judgment

---

same facts" as the case at hand (citation omitted)).

[9] Though the complaint and briefing suggest that this might be just Mr. Terrell's claim, we characterize it, as per the district court, as both plaintiffs' claim.

for Allgrunn. "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019). Since there is probable cause for the arrests here, *see supra*, the Terrells' First Amendment retaliation claims are defeated.

## VII.

The district court denied summary judgment to Officers Henderson and Banta on the Terrells' failure-to-intervene claims. We reverse and render judgment for the officers.

### A.

Plaintiffs assert that the officers waived their QI defense to this claim. It is true that the words "qualified immunity" do not appear in the portion of the officers' motion, in the short section tailored specifically to failure to intervene. Even so, it is evident that the officers were asserting QI as to this claim. In multiple places the officers asserted QI as to all the claims in this case, with varying degrees of explicitness. *See, e.g.*, ROA. 396 ("Probable cause and qualified immunity bar all of plaintiffs' claims under both federal and state law."). The officers devoted a freestanding section of their memorandum to QI, which—though it focused on false arrest—in passing seems to assert QI against claims from "multiple [c]onstitutional provisions, including the First, Fourth, and Fourteenth Amendments." And the officers contended that there was no unconstitutional failure to intervene, which is part of the QI analysis.

Moreover, it is quite possible that the strictures of waiver are relaxed in the context of invoking QI because "[o]nce the defense . . . has been raised, the plaintiff has the burden of demonstrating that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (cleaned up). But we need not explore the bare minimum required to

invoke QI properly in this case. The officers' relevant pleadings in the district court do not waive the QI defense as to failure to intervene.[10]

## B.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation marks and citations omitted). "Clearly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like this from assuming that proper procedures . . . have already been followed." *White v. Pauly*, 580 U.S. 73, 80 (2017) (per curiam). Moreover, officers need not "accept a suspect's innocent explanation at face value." *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018).

Considering these principles and our holdings above, this issue is easy to resolve. All the specific instances, listed by plaintiffs as points at which Henderson and Banta failed to intervene, were not violations of clearly established constitutional law. That ends the inquiry.

## VIII.

In this posture, we may exercise our pendent jurisdiction over the Louisiana state law claims. *See Morin v. Caire*, 77 F.3d 116, 119–20 (5th Cir. 1996). Judicial economy is a central consideration in deciding whether to do that. *See id.*

---

[10] The plaintiffs make an analogous waiver contention in favor of their First Amendment retaliation claims. That is even less convincing because the officers do explicitly invoke QI in the First Amendment retaliation section of their district court memorandum.

No. 23-30723

Because QI under Louisiana law closely relates to QI under federal law,[11] the state law claims are under-briefed before our court, and the district court erred on most of the federal claims, we vacate the order denying summary judgment on the state law claims so that the district court might consider them again in light of this opinion.

\* \* \* \* \*

We REVERSE and RENDER judgment for the defendants on all federal claims except for Mr. Terrell's excessive force claim. We DISMISS, for want of jurisdiction, the appeal insofar as it pertains to the denial of summary judgment on Mr. Terrell's excessive force claim to the extent that the conduct in question occurred when Mr. Terrell was out of the video frame. We VACATE the denial of summary judgment on the Louisiana state law claims and REMAND for reconsideration in light of this opinion.

---

[11] *See, e.g.*, *Moresi v. Dept. of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).